**UNITED STATES of America, Plaintiff,**

v.

**S. Paul HOBBS, et al., Defendants.**

**Civ. A. No. 89–327–N.**

United States District Court,
E.D. Virginia,
Norfolk Division.

May 16, 1990.

Richard R. Nageotte, Nageotte, McCormack, Kreim & Gray, Woodbridge, Va., for defendants.

## MEMORANDUM OPINION

REBECCA BEACH SMITH, District Judge.

This action was brought by the United States seeking injunctive relief and the imposition of civil penalties against the defendants for placing fill materials into waters of the United States without first seeking a permit from the United States Army Corps of Engineers (hereinafter referred to as "Corps").[1] The court conducted a twelve (12) day jury trial in January, 1990, to determine liability of each defendant.[2] On January 26, 1990, the jury determined that the property owned by Phillip Ray Hobbs and his wife, Dorothy V. Hobbs, and the property owned by S. Paul Hobbs and his wife, Donna M. Hobbs, all located on Ware Neck in Gloucester, Virginia, are wetlands adjacent to waters of the United States. The jury found that defendants Phillip Ray Hobbs and Dorothy V. Hobbs discharged pollutants onto their wetlands property in 1980, 1984, and 1985. The jury further found that defendants S. Paul Hobbs and Donna M. Hobbs discharged pollutants onto their wetlands property in 1986, 1987, and 1988. On January 24, 1990, the court conducted an extensive hearing on numerous motions presented by both parties in this case. At that time, the court determined that this action against the defendants was not time-barred and submitted the case to the jury. Both parties articulated their positions at the hearing and have since filed briefs with respect to the

Craig B. Shaffer, Environmental Defense Section, Land & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

---

1. Originally, on April 25, 1989, defendants herein filed a complaint challenging the Environmental Protection Agency's (hereinafter referred to as "EPA") Findings of Violation and Order for Compliance issued against them. In turn, on June 23, 1989, plaintiff herein filed a counterclaim charging defendants herein with violating Section 301(a) of the Clean Water Act (hereinafter referred to as "CWA"), 33 U.S.C. § 1311(a). This court, on December 14, 1989, dismissed counts 1, 2, and 3 of the complaint for lack of subject matter jurisdiction and granted partial summary judgment with respect to count 4 of the complaint. Because no portion of the original complaint survived, the counterclaim became the only cause of action in this suit, thereby making the United States the plaintiff and the Hobbses the defendants.

2. On December 14, 1989, the court granted plaintiff's motion for bifurcation into separate trials on the issues of liability and damages. The bench trial on damages is now set for May 17, 1990.

statute of limitations issues.[3] This opinion sets forth the court's reasoning on these issues in further detail.

### Applicable Statute of Limitations

■ No specific statute of limitations exists for actions commenced pursuant to the CWA. Ordinarily, when a federal statute does not contain a limitations period, federal courts apply the "most appropriate" statute of limitations under state law, if there is no "relevant" federal statute of limitations. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). This general rule is qualified by an exception, namely that an otherwise applicable state limitations period should not be applied where its application would undermine federal policy. *Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977). The Supreme Court in *Occidental* stated:

> When Congress has created a cause of action and has not specified the period of time within which it may be asserted, the Court has frequently inferred that Congress intended that a local time limitation should apply....

But the Court has not mechanically applied a state statute of limitations simply because a limitations period is absent from the federal statute. State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies.

*Id.*[4]

The court must first consider whether a relevant federal statute of limitation exists. *See, e.g., Sierra Club v. Chevron U.S.A., Inc.,* 834 F.2d 1517, 1521 (9th Cir.1987). Both parties have identified 28 U.S.C. § 2462 as a relevant federal statute of limitations. That section provides:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued....

And, in the context of a citizen enforcement suit,[5] the Court of Appeals for the

---

**3.** On January 26, 1990, the court requested that the parties brief the following issues:

  1. What statute of limitations governs an action brought under Section 309(a)(3) of the CWA, 33 U.S.C. § 1319(a)(3)?; and

  2. When does a claim accrue in light of the continuing nature of the violations under Section 301(a) of the CWA, 33 U.S.C. § 1311(a)?

**4.** The Court of Appeals for the Second Circuit has also noted:

> When Congress creates a federal cause of action but does not expressly provide an applicable statute of limitations, we assume that Congress intended the courts to adopt the limitation period of an analogous cause of action. Ordinarily, courts have drawn a rule from state law, ... and "the resort to state law remains the norm for borrowing of limitations periods." ... But where the application of a state statute of limitations would "frustrate or interfere with the implementation of national policies" or "be inconsistent with the underlying policies of the federal statute," courts should borrow a timeliness rule from federal law.

*Monarch Long Beach Corp. v. Soft Drink Workers, Local 812, Int'l Bhd. of Teamsters,* 762 F.2d 228, 230 (2d Cir.1985) (citations omitted).

**5.** The CWA provides that "any citizen may commence a civil action on his own behalf against

any person ... who is alleged to be in violation of (A) an effluent standard or limitation under this Act or (B) an order issued by the [EPA] Administrator or a State with respect to such a standard or limitation." 33 U.S.C. § 1365(a)(1). A citizen may also bring an action against the Administrator for failing to perform nondiscretionary duties. 33 U.S.C. § 1365(a)(2). These types of actions are generally referred to as citizen enforcement suits. Most of the cases which discuss the statute of limitations issue under the CWA involve citizen enforcement suits. The federal courts in those cases have declined to borrow state limitations periods and have instead held that 28 U.S.C. § 2462 applies to citizen suits under the CWA. *See Sierra Club v. Chevron U.S.A., Inc.,* 834 F.2d 1517 (9th Cir. 1987); *National Wildlife Fed'n v. Consumers Power Co.,* 657 F.Supp. 989 (W.D.Mich.1987); *Atlantic States Legal Found. v. Al Tech Specialty Steel Corp.,* 635 F.Supp. 284 (N.D.N.Y.1986); *Chesapeake Bay Found. v. Bethlehem Steel Corp.,* 608 F.Supp. 440 (D.Md.1985); *Sierra Club v. Simkins Indus. Inc.,* 617 F.Supp. 1120 (D.Md. 1985); *Connecticut Fund for the Env't v. Job Plating Co,* 623 F.Supp. 207 (D.Conn.1985); *Friends of the Earth v. Facet Enters., Inc.,* 618 F.Supp. 532 (W.D.N.Y.1984); *cf. Student Pub. Interest Research Group of New Jersey v. Tenneco Polymers, Inc.,* 602 F.Supp. 1394 (D.N.J.1985).

Ninth Circuit in *Chevron* stated that "section [2462] clearly applies to enforcement actions brought by the EPA; such actions are by the government and 'for the enforcement of [a] civil fine.'" *Chevron*, 834 F.2d at 1521 (citing 28 U.S.C. § 2462).[6]

██ Defendants agree that 28 U.S.C. § 2462 is applicable to the instant case. They argue, however, that it applies *only if* the court determines that Virginia's one-year statute of limitations[7] is inapplicable. *See* Defendants' Trial Memorandum on Statute of Limitations at 1–3 (Feb. 9, 1990) (hereinafter referred to as "Defendants' Brief"). Defendants state: "If this Court determines that no Virginia statute of limitations applies to Clean Water Act enforcement actions, the federal statute of limitations at 28 U.S.C. § 2462 *clearly applies.*" *Id.* at 1 (emphasis added). Defendants' argument is inconsistent with the requirement in *Johnson* to use a relevant federal statute of limitations, if available. *See supra* at 1408. Implicit in defendants' recognition that Section 2462 is an applicable federal limitations period is an acknowledgment that the instant case falls within the contours of *Johnson*. The requirement as stated in *Johnson* is to use a state statute of limitations only if no federal one applies; it is not to use an applicable federal statute of limitations only if no state limitations statute applies. *See* 421 U.S. at 462, 95 S.Ct. at 1721. Moreover, even if Virginia's one-year statute of limitations was applicable here, its application would interfere with the implementation of national policy underlying the CWA.

██ Congress designed the CWA to recapture and preserve the "integrity of the Nation's waters." 33 U.S.C. § 1251(a); *see P.F.Z. Properties, Inc. v. Train*, 393 F.Supp. 1370 (D.D.C.1975); *United States v. Holland*, 373 F.Supp. 665 (M.D.Fla.1974). Indeed, a primary objective of the CWA is the "national goal" of eliminating the discharge of pollutants into navigable waters.

33 U.S.C. § 1251(a)(1). Application of diverse state limitations periods would produce not only non-uniform enforcement from state to state, but it would also diminish the effective enforcement of the CWA. *Chesapeake Bay Found. v. Bethlehem Steel Corp.*, 608 F.Supp. 440, 447 (D.Md. 1985). Each state potentially could manipulate its statute of limitations depending on its concerns with respect to the environment. *Id.* States hostile to polluters could adopt a lengthier statute of limitations while others, more accommodating to violators of the CWA, could provide for a brief limitations period. *Id.* Clearly, "[i]n the context of the Clean Water Act, it could not have been the intent of Congress to have federal courts borrow state statutes of limitations and certainly not statutes as short as one year." *Id.* Therefore, because a relevant federal statute of limitations exists and because applying Virginia's one-year statute of limitations would frustrate national policy, this court finds that 28 U.S.C. § 2462 is the most appropriate limitations period to be applied to this action for civil penalties.

### Accrual

██ Title 28 U.S.C. § 2462 requires commencement of suit for civil penalties within five years from the date when the claim *first accrued.* Defendants maintain that the claims against them first accrued when they actually physically ditched and drained their property. Defendants' Brief at 4. However, it has been held that accrual, for statute of limitations purposes under the CWA, occurs *not* "when the violations actually occurred, but when the reports that document[ ] those violations [are] filed with the E.P.A." *Atlantic States Legal Found. v. Al Tech Specialty Steel Corp.*, 635 F.Supp. 284, 287 (N.D.N.Y.1986); *see National Wildlife Fed'n v. Army Dep't*, 29

---

6. *See also Bertha Building Corp. v. National Theatres Corp.*, 269 F.2d 785, 788 (2d Cir.1959), *cert. denied*, 361 U.S. 960, 80 S.Ct. 585, 4 L.Ed.2d 542 (1960) (Section 2462 applies only to actions brought by the United States and *qui tam* actions on behalf of the United States.).

7. Va.Code § 8.01–248 (1950) (as amended) provides: "Every personal action, for which no limitation is otherwise prescribed, shall be brought within one year after the right to bring such action has accrued."

Env't Rep.Cas. 1941, 1944 (E.D.N.C.1989). In *Atlantic States*, the court indicated that:

> It would have been practically impossible for the plaintiff to have discovered the alleged violations of the defendant on its own. It is only when reports are filed with the E.P.A. that the public becomes aware that violations have occurred. To hold that the statute begins to run when violations actually occur, as opposed to when they are discovered, would impede, if not foreclose, the remedial benefits of the statute.

*Id.* at 287–88.

■ The evidence established at trial indicates that on December 12, 1988, Mr. Gary Frazer, a biologist with the United States Fish and Wildlife Service, submitted his report on the defendants' property to EPA Region III.[8] In his report, Mr. Frazer analyzed field data collected from the defendants' property and recommended that the Corps issue a cease and desist order. While the evidence presented at the jury trial indicates that the EPA may have been alerted to possible violations involving the defendants shortly before receiving Mr. Frazer's report, the report nevertheless is the first piece of information to formally detail and document the results of any field studies conducted on defendants' property.[9] Therefore, consistent with the holding in *Atlantic States*, this court finds that the plaintiff's cause of action accrued on December 12, 1988, when EPA Region III received the Frazer report. The plaintiff filed a counterclaim which is the basis for the instant action on June 23, 1989, well within the five year period contemplated by 28 U.S.C. § 2462. Accordingly, the plaintiff's action for civil penalties is not time-barred.

### Injunctive Relief

■ The limitations period set forth in 28 U.S.C. § 2462 applies only to suits for civil penalties. This section, by its own terms, has no bearing on suits in equity. Plaintiff in this case seeks both civil penalties pursuant to 33 U.S.C. § 1319(d) and injunctive relief pursuant to 33 U.S.C. § 1319(b). While this court finds that 28 U.S.C. § 2462 applies to enforcement actions under the CWA, *see supra* at 2–6, that holding does not govern this court's actions with respect to the equitable relief sought by plaintiff. *See Holmberg v. Armbrecht,* 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946) ("Traditionally ... statutes of limitation are not controlling measures of equitable relief."); *North Carolina Wildlife Fed'n v. Army Dep't,* 29 Env't Rep.Cas. 1941, 1944 (E.D.N.C.1989) (plaintiffs' citizen enforcement suit is governed by the doctrine of laches since 28 U.S.C. § 2462 does not apply to a suit seeking only equitable relief). Instead, the doctrine of laches governs the availability of equitable relief. Statutes of limitations serve the purpose of protecting litigants against claims made stale by the passage of time. Laches, on the other hand, has as its chief concern not the issue of time but the inequity of allowing a claim to be enforced. *Holmberg,* 327 U.S. at 396, 66 S.Ct. at 584–85 (quoting *Galliher v. Cadwell,* 145 U.S. 368, 373, 12 S.Ct. 873, 875, 36 L.Ed. 738 (1892)). Laches will justify dismissal of a suit in equity if a plaintiff has not diligently pursued the case and "where the plaintiff['s] 'lack of diligence is wholly unexcused; and both the nature of the claim and the situation of the parties was such as to call for diligence.'" *Id.* (quoting *Benedict v. City of New York,* 250 U.S. 321, 328, 39 S.Ct. 476, 478, 63 L.Ed. 1005 (1919)). Nothing in the record of this case shows any lack of diligence by the plaintiff in commencing this action. Therefore, plaintiff's claim for injunctive relief is not barred by the doctrine of laches.

---

8. At the jury trial, Mr. Frazer's report was admitted into evidence as Exhibit 115.

9. Mr. James Butch, a regional wetlands enforcement coordinator for the EPA, testified that he spoke with Mr. Frazer sometime in early December of 1988. During this conversation, Mr. Frazer expressed concerns about possible illegal filling activities occurring on defendants' property. But, only after receiving Frazer's report did Mr. Butch send out Mr. Charles Rhodes, a regional wetlands ecologist with the EPA, to visit the site.

The Clerk shall forward a copy of the Memorandum Opinion to all counsel of record.