UNITED STATES of America, Plaintiff,

v.

**WINDWARD PROPERTIES, INC., Defendant.**

**Civ. No. 1:91–cv–348–JEC.**

United States District Court, N.D. Georgia, Atlanta Division.

March 31, 1993.

Melissa A. Heath, U.S. EPA, Office of Regional Counsel, Daniel A. Caldwell, III, U.S. Attorney's Office, Keith W. Holman, Atlanta, GA, Jon M. Lipshultz, Stephen L. Samuels, U.S. Dept. of Justice, Environment & Natural Resources Div., Environment Defense Section, Washington, DC, for plaintiff.

C. Christopher Hagy, Teresa Wynn Roseborough, Sutherland, Asbill, & Brennan, Carol Brittain Allums, Windward Properties, Inc., Atlanta, GA, for defendant.

## ORDER

CARNES, District Judge.

This case is presently before the Court on Defendant's Motion for Partial Summary Judgment [15], Plaintiff's Motion for Partial Summary Judgment [27], and Plaintiff's Motion to Amend Complaint [33]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the motion to amend should be granted and both motions for summary judgment should be denied.

## BACKGROUND

Plaintiff, the United States of America, brought this case as a civil enforcement action pursuant to section 309 of the Clean Water Act ("CWA"), 33 U.S.C. § 1319, seeking injunctive relief and civil penalties against Defendant, Windward Properties, Inc. ("Windward"), for five alleged violations of the CWA at Windward's 3400 acre real estate development in Alpharetta, Georgia. All five violations involve the unpermitted discharge of dredged or fill materials into three streams at the Windward site (Caney Creek, Big Creek, and Camp Creek) and their adjacent wetlands in violation of sections 301 and 404 of the CWA, 33 U.S.C. §§ 1311 and 1344. Count I of the Complaint, which is the subject of Defendant's current motion for summary judgment, alleges violations by Windward between 1979 and 1982 during construction of the Lake Windward Dam. (Compl. ¶¶ 8–25).[1]

## DISCUSSION

### A. *Plaintiff's Motion to Amend*

■ Plaintiff has moved to amend its Complaint in this action to add Mobil Land Development Corporation (Georgia) as a defendant and to make technical changes to its factual allegations. The Federal Rules of Civil Procedure provide that leave to amend a complaint should be "freely given when justice so requires." FED.R.CIV.P. 15(a). "Courts have interpreted [amendment] provisions liberally, in line with the Federal Rules' overall goal of resolving disputes, insofar as possible, on the merits and in a single judicial proceeding." *Spartan Grain & Mill Co. v. Ayers*, 517 F.2d 214, 220 (5th Cir.1975).[2] In explaining the amendment standard, the Eleventh Circuit Court of Appeals has observed that "unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Shipner v. Eastern Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir.1989). In determining whether a substantial reason exists to deny leave to amend, the Court must consider the following factors: (1) undue delay, bad faith, or dilatory motive on the part of the movant, (2) repeated failure to cure deficiencies by amendments previously allowed, (3) undue prejudice to the opposing party by virtue of allowance of the amendment, and (4) futility of amendment. *Nolin v. Douglas County*, 903 F.2d 1546, 1550 (11th Cir.1990).

Defendant expresses concern that amendment of the Complaint will prolong this action unnecessarily. Plaintiff assures the Court, however, that the amendment will cause no delay in this proceeding, (Mem. in Supp. of Pl.'s Mot. to Amend at 7), and the Court will hold Plaintiff to this assurance. Accordingly, in light of the fact that consideration of the above-mentioned factors does not convince the Court that a substantial reason exists to deny Plaintiff's motion, the Court concludes that justice requires allowing Plaintiff to amend its Complaint.

### B. *Defendant's Motion for Partial Summary Judgment*

Defendant has moved for summary judgment as to Count I on two grounds. First, Defendant asserts that the action is barred by the statute of limitations. (Br. in Supp. of Mot. for Summ.J. [Def.'s Br.] at 11–29). Alternatively, Defendant argues that the action is barred by the doctrine of laches. (*Id.* at 29–49).

### 1. *Statute of Limitations*

The parties apparently agree that this action is governed by 28 U.S.C. § 2462, which provides that an action "shall not be entertained unless commenced within five years from the date when the claim first accrued

---

1. The parties have entered into a Proposed Partial Consent Decree that would settle Counts II, III, and IV of the Complaint. Count V, which pertains to the construction of a recreation area below Lake Windward, is not covered by the consent decree and is not at issue in this Order.

2. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit Court of Appeals handed down prior to the close of business on September 30, 1981.

..."[3] Both parties also agree that the critical question in this case is when the Government's claim "accrued." Defendant asserts that a CWA claim accrues on the date of the violation—in this case, not later than March 1982—and, as a result, Plaintiff's claim is barred by the statute of limitations as this action was not filed until February 14, 1991. Plaintiff, on the other hand, raises three arguments in opposition to the motion for summary judgment. First, the Government asserts that the claim did not accrue until Defendant's unlawful activities were discovered. (Pl.'s Mem. in Opp'n to Mot. for Summ.J. [Pl.'s Mem.] at 9). Second, Plaintiff argues that Windward's unlawful actions constitute an ongoing violation. (*Id.* at 16). Finally, Plaintiff alleges that the statute of limitation does not apply to the Government's request for injunctive relief. (*Id.* at 22).

### a. *Statutes of limitation and injunctive relief*

[3] As an initial matter, the Court must determine whether § 2462 applies at all to Plaintiff's request for injunctive relief. Plaintiff argues that, because that section applies only to actions "for the enforcement of any civil fine, penalty or forfeiture," it does not apply to requests for injunctive relief. (Pl.'s Mem. at 22–23). The Court concludes, however, that the weight of authority dictates a contrary result. The majority of courts that have considered the question, including the United States Supreme Court, have held that when legal and equitable relief are available concurrently (*i.e.*, when an action at law or equity could be brought on the same facts), "equity will withhold its relief ... where the applicable statute of limitations would bar the concurrent legal remedy." *Cope v. Anderson*, 331 U.S. 461, 464, 67 S.Ct. 1340, 1341, 91 L.Ed. 1602

(1947). *See also Russell v. Todd*, 309 U.S. 280, 289, 60 S.Ct. 527, 532, 84 L.Ed. 754 (1940); *United Transp. Union v. Florida East Coast Ry.*, 586 F.2d 520, 524 (5th Cir. 1978) (when "both legal and equitable relief [are] sought ... the statute of limitations bars both"); *Gilbert v. City of Cambridge*, 932 F.2d 51, 57 (1st Cir.) ("It is settled ... that where legal and equitable claims coexist, equitable remedies will be withheld if an applicable statute of limitation bars the concurrent legal remedy."), *cert. denied, —— U.S. ——*, 112 S.Ct. 192, 116 L.Ed.2d 153 (1991); *Nemkov v. O'Hare Chicago Corp.*, 592 F.2d 351, 354–55 (7th Cir.1979); *Saffron v. Department of Navy*, 561 F.2d 938, 942–43 (D.C.Cir.1977), *cert. denied*, 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780 (1978).[4] In this case, it is apparent that legal and equitable remedies are available concurrently, as the Government has requested both civil penalties and injunctive relief. (Compl. at 12). Accordingly, the limitations period provided by § 2462 applies to Plaintiff's request for both legal and equitable relief.

### b. *Accrual of the Government's claim*

■ Defendant asserts that Plaintiff's claim in Count I accrued not later than March 1982 (the last date on which an alleged discharge of a pollutant into the waters of the United States occurred in connection with the construction of the Lake Windward Dam) and, as a result, the claim is barred by the five year statute of limitations. (Def.'s Br. at 19). As its initial argument in opposition, Plaintiff asserts that its claim did not accrue until the Government discovered Defendant's unlawful activities. (Pl.'s Mem. at 9).

---

3. Plaintiff, however, asserts that § 2462 does not apply to its request for injunctive relief (see *infra* part B(1)(b)).

4. The Government cites *Holmberg v. Armbrecht*, 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946), in support of its argument that the statute of limitations does not apply to its claim for equitable relief. (Pl.'s Mem. at 22). *Holmberg*, however, involved a situation in which the sole available remedy was in equity. *Nemkov*, 592 F.2d at 354. This Court agrees that the statute of limitations does not apply in such an

"exclusive remedy" situation. *Russell v. Todd*, 309 U.S. at 289, 60 S.Ct. at 532. However, the Court also concludes that *Holmberg* does not control the result in a "concurrent remedy" situation such as the present case. *See Russell*, 309 U.S. at 289, 60 S.Ct. at 532 (contrasting the rule in exclusive and concurrent remedy situations); *Nemkov*, 592 F.2d at 354–55 (contrasting exclusive remedy cases (*Russell* and *Holmberg*) and concurrent remedy cases (such as *Cope v. Anderson*)).

It appears that the majority of courts that have interpreted § 2462 in the context of alleged violations of the CWA have adopted some type of "discovery rule" under which the claim does not accrue until the Plaintiff knew (or, perhaps, reasonably should have known) of the violation.[5] The initial CWA cases in which a discovery rule was adopted involved actions brought to enforce effluent limitations against National Pollution Discharge Elimination System ("NPDES") permit holders.[6] In *Atlantic States Legal Found. v. Al Tech Specialty,* 635 F.Supp. 284, 287 (N.D.N.Y.1986), the United States District Court for the Northern District of New York held that the statute of limitations did not begin to run when the NPDES violations at issue actually occurred, but rather when the reports that documented those violations were filed with the EPA.[7] Underlying the court's decision was the concern that "[t]o hold that the statute begins to run when violations actually occur, as opposed to when they are discovered, would impede, if not foreclose, the remedial benefits of the statute." *Id.* at 288. *See also Public Int. Research Group of N.J. v. Powell Duffryn,* 913 F.2d 64, 75 (3d Cir.1990) (holding that claim against NPDES permit holder did not begin to run until report listing the violation is filed), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991).

Several subsequent CWA cases that dealt with the time of accrual for statute of limitations purposes addressed actions which, like the present proceeding, involved alleged violations due to the discharge of dredge or fill material without a permit. In *North Carolina Wildlife Fed'n v. Woodbury ("NCWF"),* 29 Env't Rep.Cas. (BNA) 1941, 1944, 1989 WL 106517 (E.D.N.C.1989), the United States District Court for the Eastern District of North Carolina extended, in dicta, the *Atlantic States* rationale to dredge/fill violations, observing that the discovery rule "recognizes that it is virtually impossible for

the public to discover violations until reports have been filed with the EPA." Finally, in *United States v. Hobbs,* 736 F.Supp. 1406, 1409–10 (E.D.Va.1990), the United States District Court for the Eastern District of Virginia held that a dredge/fill CWA action did not accrue for statute of limitations purposes when the defendants actually ditched and drained their property, but rather accrued when the EPA later received a report from a Fish and Wildlife Service biologist that formally documented the results of field studies showing the violations.

It appears to the Court that implementation of a discovery rule in CWA actions is grounded on a number of valid policy concerns. The objective of the CWA is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters" in order to "provide[ ] for the protection and propagation of fish, shellfish and wildlife ..." 33 U.S.C. § 1251(a) & (a)(2). Protection of wetlands clearly plays a significant role in achieving this objective, as wetlands filter and purify water, prevent flooding and erosion by slowing the flow of surface runoff into lakes, rivers, and streams, support such significant natural biological functions as food chain production, and provide general habitat and nesting, spawning, rearing, and resting sites for aquatic species. *United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 134–35, 106 S.Ct. 455, 463–64, 88 L.Ed.2d 419 (1985). Due to the nature of many CWA violations, immediate detection is difficult, if not impossible. Accordingly, a strict interpretation of § 2462 which provides that a claim accrues at the time of the violation would have the effect of significantly thwarting the purpose of the CWA.

Defendant asserts, however, that the discovery rule should be viewed as a narrow exception to the general rule that the limitations period begins to run at the time of violation. Accordingly, Defendant argues that, notwithstanding the extension of the

---

**5.** *But see United States v. C & R Trucking Co.,* 537 F.Supp. 1080, 1083 (N.D.W.Va.1982) (CWA claim accrued when oil spill occurred).

**6.** In addition to proscribing the discharge of dredged or fill material containing pollutants, the CWA establishes effluent limitations for the kind and quantity of pollutants industrial and munici-

pal dischargers may release into the water. These discharges are regulated by the EPA through NPDES permits.

**7.** NPDES permits contain specific monitoring and reporting obligations.

discovery rule to dredge/fill violations in the *NCWF* and *Hobbs* cases, the discovery doctrine should be limited to NPDES cases and not extended to dredge/fill violations. (Pl.'s Br. at 20–25). Defendant's principle rationale appears to be that dredge/fill violations, unlike NPDES violations, are "generally overwhelmingly obvious and easily observed" and, as a result, a discovery rule is not necessary. (*Id.* at 22).

The Court does not find this rationale convincing. Although it may be true that some dredge/fill violations are easily observed, many other violations may not be easily detected. As the Government notes, the typical § 404 violation involves the unpermitted filling of a wetland, after which the former wetland resembles uplands to the naked eye. In some situations detection of such a violation may be as difficult as discovery of a NPDES violation. Moreover, as Plaintiff also points out, in NPDES situations the Government is already on notice due to the permitting and reporting process that discharges are occurring, while the typical § 404 violation occurs without a permit or report by the violator, arguably making detection more difficult. At any rate, the Court concludes that, to the extent that a given dredge/fill violation is easier to detect than a NPDES violation, this fact is taken into account by the objective nature of the discovery rule adopted by the Court (see *infra*). That is, if the violation is easily detectible, then the Government reasonably should have known of its presence sooner and, as a result, the limitations period will begin running sooner. Accordingly, the Court concludes that some type of discovery rule is appropriate in this case.

■ Plaintiff would apparently have the Court adopt a rule which provides that a CWA claim does not accrue until the Government actually discovers the violation. (Pl.'s Mem. at 9). In a different context, however, the Eleventh Circuit Court of Appeals has recently employed a discovery rule under which the statute of limitations begins to run when the plaintiff knows of the violation, or "through the use of reasonable diligence should have discovered" the violation. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1236 (11th Cir.1992) (interpreting Georgia law in continuing tort cases). *See also Proudfoot v. Seafarer's Int'l Union*, 779 F.2d 1558, 1559 (11th Cir.1986). The Court concludes that such an objective discovery rule adequately balances the interests found in CWA cases. Under such a rule, many of the policy benefits of statutes of limitations are preserved as the Government cannot unreasonably delay in bringing an action, while the public is not harmed by an inability to prosecute claims for violations that could not reasonably have been discovered.

Having decided that a discovery rule is appropriate in this action, the Court must now determine whether a genuine question of fact exists as to whether Plaintiff actually knew or reasonably should have known that Defendant was violating the CWA more than five years prior to bringing this action. In making this determination, the " 'inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.' " *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962)).

Defendant has produced competent evidence showing that its agents contacted the Corps of Engineers regarding the construction of the dam. (Def.'s Reply Br. at 14). Plaintiff, however, has produced competent evidence showing that the Government was not aware of the violation until 1989. (Mazanti Aff. ¶¶ 3, 4, 7(e)). Accordingly, for summary judgment purposes, Defendant has not met its burden of showing that no genuine question exists as to whether the Government actually knew of the violation more than five years before filing this action.

Alternatively, Defendant argues that the Court should find as a matter of law that Plaintiff reasonably should have known of the violation before February 14, 1986. (Def.'s Reply Br. at 15). In support of this argument, Defendant asserts that "the discovery of the facts supporting the claim by any responsible government agency or official" is sufficient to trigger the statute. (*Id.* at 15 n. 8). Thus, Defendant argues, Plaintiff should reasonably have known of the violation due

to the above-mentioned contact with the Corps of Engineers and the fact that Defendant secured a Safe Dams Act Permit from the State of Georgia and a construction permit from the city of Alpharetta. (*Id.* at 11). Moreover, Defendant asserts that Plaintiff was placed on notice of the violation due to: (1) the high degree of publicity surrounding the building of the lake, (2) aerial photographs in the Government's possession showing the lake, and (3) the fact that evidence of the dam's existence was shown in public records, the contents of which the Government is charged with knowing. (*Id.* at 15–16). The Court concludes, however, that, although it is possible that Defendant could ultimately prove at trial that Plaintiff should have discovered the infraction, none of the above-cited facts is sufficient for the Court to say as a matter of law at the summary judgment stage that the Government reasonably should have known of the violation at issue before February 14, 1986. *See, e.g., Welch,* 951 F.2d at 1237 (presence of genuine factual questions precluded summary judgment on basis of statute of limitations); *Benson v. General Motors Corp.,* 716 F.2d 862, 864 (11th Cir. 1983) (same); *United States v. Hobbs,* 736 F.Supp. at 1410 (court looked to evidence produced at trial to determine when plaintiff knew or should have known of violation of CWA). Accordingly, a genuine question of fact exists as to whether this action is barred by the statute of limitations and summary judgment is not appropriate on that basis.[8]

### 2. Laches

■■■ Defendant alternatively asserts that Count I is barred by the doctrine of laches.[9] Under the law in this circuit, however, "[i]t is well settled that the United States is not ... subject to the defense of laches in enforcing its rights." *United States v. Moore,* 968 F.2d 1099, 1100 (11th Cir.1992) (quoting *United States v. Summerlin,* 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940)). The Eleventh Circuit Court of Appeals has observed that the purpose behind § 404 of the CWA is to "insure that the public interest in environmental safety and quality is preserved," *Deltona Corp. v. Alexander,* 682 F.2d 888, 892 (11th Cir.1982), and has held that "granting a section 404 permit is unquestionably an exercise of the government's sovereign power to protect the public interest." *Id.* In *Weiszmann v. District Engineer,* 526 F.2d 1302, 1305 (5th Cir.1976), a case that, like the present one, involved enforcement of public rights under § 404 of the CWA, the former Fifth Circuit Court of Appeals held that the Government is not subject to the defense of laches when enforcing its rights. Due to this controlling precedent on the question, the Court concludes that where, as here, the United States is acting in its sovereign capacity to enforce public rights or protect public interests, it is not subject to the defense of laches.[10] Accordingly, Defendant's laches defense is insufficient as a matter of law.

### C. Plaintiff's Motion for Partial Summary Judgment

The Government has moved for summary judgment on Defendant's affirmative defens-

---

**8.** Because of its decision that a genuine question of material fact exists as to when Plaintiff knew or should have known of the violation, the Court finds it unnecessary to address Plaintiff's "continuing violation" argument.

**9.** In order to preclude an action due to laches, a defendant must establish that: (1) the plaintiff delayed in asserting the right or claim, (2) the delay was not excusable, and (3) the delay caused the defendant undue prejudice. *Conagra, Inc. v. Singleton,* 743 F.2d 1508, 1517 (11th Cir.1984). The test for laches is flexible, requiring a careful examination of both the delay and the prejudice caused by that delay. *Id.*

**10.** In support of its argument that the defense of laches should be available in this action, Defendant has cited several cases in which the Govern-

ment was held to be subject to the defense. The majority of these cases, however, involve the Equal Employment Opportunity Commission and, as the Fifth Circuit Court of Appeals has observed, suits by the EEOC are different for laches purposes than other governmental suits. *United States v. Popovich,* 820 F.2d 134, 136 (5th Cir.), *cert. denied,* 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987). Because the EEOC normally brings claims on behalf of individuals rather than on behalf of the public as a whole, these cases do not indicate that the Government is subject to a laches defense when acting in its sovereign capacity to enforce a public right or protect the public interest. *Id.*

es of laches, estoppel, and equal protection. As an initial matter, Defendant asserts that a motion for summary judgment is not an appropriate procedural device for striking affirmative defenses. (Def.'s Resp. to Govt.'s Mot. for Summ.J. at 2). Although this argument does not appear to the Court to be persuasive, *see generally* 10A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2734, at 406–07 (1983) (defenses that raise no material issues of fact may be subject to partial summary adjudication in plaintiff's favor in accordance with Rule 56), the Court will deny Plaintiff's motion for partial summary judgment and instead strike any insufficient defenses on its own initiative pursuant to Rule 12(f). *See, e.g., FDIC v. British–American Corp.,* 744 F.Supp. 116, 117 (E.D.N.C.1990) (treating motion for partial summary judgment as to affirmative defenses as Rule 12(f) motion to strike).

For the reasons discussed *supra,* the Court finds that Defendant's laches defense is insufficient as a matter of law and, accordingly, the Court directs that this defense be stricken. Additionally, under the law in this circuit, absent "affirmative misconduct" on the part of a government agent, the Government cannot be estopped when it is exercising its sovereign powers for the benefit of the public. *Deltona Corp. v. Alexander,* 682 F.2d 888, 891–92 (11th Cir.1982). Because the act of granting a § 404 permit is "unquestionably an exercise of the government's sovereign power to protect the public interest," *id.* at 892, and Defendant has not alleged affirmative misconduct on the part of the Government, Defendant's estoppel defense also fails as a matter of law and is stricken. The Court cannot say, however, that Defendant's equal protection defense is insufficient as a matter of law. Accordingly, the Court will not strike this defense.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment [15] is **DENIED,** Plaintiff's Motion for Partial Summary Judgment [27] is **DENIED,** and Plaintiff's Motion to Amend Complaint [33] is **GRANTED.** The Court directs that Defendant's laches and estoppel defenses be stricken pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

SO ORDERED.