UNITED STATES of America, Plaintiff,

v.

The **TELLURIDE COMPANY**, Mountain Village, Inc. dba Telluride Mountain Village, Inc., and Telluride Ski Area, Inc., Defendants.

Civ. A. No. 93–K–2181.

United States District Court, D. Colorado.

May 2, 1995.

Robert H. Foster, Rebecca A. Lloyd, U.S. Dept. of Justice, Environmental Defense Section, Denver, CO, for plaintiff.

David S. Neslin, James E. Scarboro, Arnold & Porter, Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Before me is Defendants' motion for partial summary judgment. Jurisdiction is based on 28 U.S.C. §§ 1331, 1345 and 1355 and 33 U.S.C. § 1319(b). I grant the motion.

### I. *Background.*

This case is a civil enforcement action brought by the United States pursuant to section 309 of the Clean Water Act, 33 U.S.C. § 1319, seeking injunctive relief and civil penalties against the Telluride Company, Mountain Village Company, Inc., and Telluride Ski Area, Inc. (collectively, "Telco"), developers of the Telluride ski resort in Telluride, Colorado for violations of the Clean Water Act at a land development and ski resort property ("site") owned and developed by Telco.

The government first brought its allegations of illegal fill activities to Telco's attention no later than September 11, 1990 in a meeting between the United States Environmental Protection Agency ("EPA") and attorneys for Telco. (United States Br. Opp.Defs.' Mot.Partial Summ.J., Ex. 1 ¶ 3.) The United States and Telco negotiated a settlement in 1993. On October 15, 1993, the United States filed its original complaint simultaneously with a proposed consent decree. I rejected the proposed consent decree. *United States v. The Telluride Co.*, 849 F.Supp. 1400, 1406 (D.Colo.1994). The United States moved to amend its complaint and, pursuant to court order, filed a revised amended complaint ("Complaint") on October 7, 1994.

The Complaint alleges the unpermitted discharges of dredged or fill materials into wetlands on the site in violation of sections 301 and 404 of the Act, 33 U.S.C. §§ 1311, 1344. Specifically, the Complaint alleges Telco, in developing the property, filled or caused to be filled over 60 acres of wetlands from 1981 through 1994. (Compl. ¶¶ 21, 22.)

Telco answered the Complaint on November 28, 1994. On December 20, 1994, Telco filed the instant motion for partial summary judgment on statute of limitations grounds. Trial is set for October 2, 1995.

### II. *Standards for Summary Judgment.*

Summary judgment is proper where the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering this motion, one must construe the factual record and reasonable inferences therefrom in the light most favorable to the non-moving party. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 528 (10th Cir.1994). The mere allegation of a factual dispute will not defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The non-moving party must point to specific facts, "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves," to avoid summary judgment. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

### III. *Merits.*

Telco argues I should grant partial summary judgment and bar claims based on the alleged discharge of fill materials into wetlands where the alleged discharge took place before October 15, 1988. Telco maintains the applicable statute of limitations, 28 U.S.C. § 2462, gives the government five years from the date of the violation to file a suit for civil penalties pursuant to the CWA, thus precluding claims on violations which occurred before October 15, 1988.

Section 2462 reads in relevant part: "Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five

years from the date when the claim first accrued...." 28 U.S.C. § 2462.

Telco asserts, pursuant to 28 U.S.C. § 2462, the government's claims accrued at the time the alleged violations were committed. Telco relies on *3M Co. v. Browner*, 17 F.3d 1453 (D.C.Cir.1994) (rehearing and suggestion for rehearing en banc denied May 9, 1994). In that case, 3M petitioned for review of the EPA's assessment of civil penalties for violations of the Toxic Substances Control Act ("TSCA"). Actions for civil penalties under TSCA are also limited by 28 U.S.C. § 2462. *3M*, 17 F.3d at 1455. The EPA had assessed civil penalties because 3M "had unwittingly committed several violations" of TSCA between August 1980 and July 1986. *Id.* at 1454. On September 2, 1988, the EPA filed an administrative complaint against 3M seeking $1.3 million in civil penalties under TSCA for failure to file Premanufacture Notices and for submitting inaccurate Customs certifications. *Id.* at 1455. 3M interposed a statute of limitations defense, claiming the EPA was barred from seeking civil penalties for violations which occurred before September 2, 1983—more than five years before the complaint was filed. The Administrative Law Judge ("ALJ") denied 3M's defense. 3M appealed to the D.C. Circuit.

The D.C. Circuit reversed the ALJ and determined 28 U.S.C. § 2462 did apply to administrative proceedings for civil penalties. *Id.* at 1455–59. The court then considered "the meaning of § 2462's phrase 'unless commenced within five years from the date when the claim first accrued.'" *Id.* at 1460. After analyzing the statute's history and application, and reviewing the nature of statutes of limitations in general, the court held "an action, suit or proceeding to assess or impose a civil penalty must be commenced within five years of the violation giving rise to the penalty." *Id.* at 1462. Thus the court precluded EPA from assessing penalties against 3M for any violations allegedly committed more than five years before EPA filed its administrative complaint.

The United States concedes 28 U.S.C. § 2462 applies to its claim for civil penalties but argues the provision is only a limited bar to its civil penalties claim here because (1) since Telco has not removed allegedly unlawful fill material, the violations are continuing; (2) the statute of limitations was equitably tolled during the negotiations process leading to the proposed consent decree; and (3) 28 U.S.C. § 2462 does not apply to claims for injunctive relief.

### A. *Continuing Violation.*

■ The government argues the discharge of dredged or fill materials into waters of the United States is a "continuing violation" as long as the adverse effects of the fill continue. Accordingly, the government maintains the statute of limitations does not begin to run until the fill is physically removed. The government cites various cases in support of its contention, none of which addresses the issue of the "continuing violation" doctrine in the statute of limitations context.

In *Sasser v. Administrator*, 990 F.2d 127, 129 (4th Cir.1993), Sasser had discharged dredged and fill materials into wetlands without a permit in 1986. The EPA administrative law judge imposed a penalty and ordered injunctive relief in the form of site restoration. Sasser filed a petition for review, alleging the EPA lacked jurisdiction to determine liability or assess an administrative penalty because, at the time of the illegal discharge in 1986, EPA's only authorized method of recovering civil penalties was through a district court action. Although the Clean Water Act was amended in February 1987 to authorize EPA to assess administrative penalties, Sasser argued the EPA's assessment of a penalty in his case was an unlawful retrospective application of the 1987 amendment.

The Fourth Circuit rejected this argument, holding Sasser's violation of the Act to be "a continuing one. Each day the pollutant remains in the wetlands without a permit constitutes an additional day of violation." *Id.* at 129. Because Sasser's violations continued after the 1987 amendment, the EPA had acted within its jurisdiction.

The *Sasser* court was not concerned with whether the violation was continuing so as to bar the commencement of the statute of limitations, but whether it was continuing for the purpose of an amendment to the Act which

came into force after the initial violation. The issue was not whether the EPA had belatedly prosecuted a stale claim but whether the EPA was authorized to prosecute such claim at all.

The United States also relies on *North Carolina Wildlife Federation v. Woodbury,* 29 Env't Rep.Cas. [BNA] 1941, 1989 WL 106517 (E.D.N.C.1989) *("NCWF ").* That case concerned whether the court had subject matter jurisdiction in a citizen's suit. The court determined defendants' failure to remove unlawful fill from waters of the United States precluded them from arguing that the violations were "wholly past" and therefore no longer actionable under the citizen suit provision of the CWA, 33 U.S.C. § 1365.

As in *Sasser,* the *NCWF* court's reasoning concerning the continuing nature of the violations related to whether the court had subject matter jurisdiction, rather than whether the statute of limitations had run. The *NCWF* court noted, if subject matter jurisdiction were denied completely because a violation was regarded as "wholly past" the day after an illegal ditching, a citizen plaintiff would never be entitled to a day in court. *Id.* at 1943. To the contrary, in the statutes of limitation context, courts have held mere ongoing impact from past violations does not extend the period in which a plaintiff must file an action. *McDougal v. County of Imperial,* 942 F.2d 668, 674–75 (9th Cir.1991); *see also Ward v. Caulk,* 650 F.2d 1144, 1147 (9th Cir.1981) ("[a] continuing violation is occasioned by continual unlawful acts, not by ill effects from an original violation.")

Telco alleges its violations are not "continuing violations," relying on *United States v. Payne,* 978 F.2d 1177, 1180 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2441, 124 L.Ed.2d 659 (1993) and *Toussie v. United States,* 397 U.S. 112, 122–23, 90 S.Ct. 858, 864–65, 25 L.Ed.2d 156 (1970). In *Payne,* the Tenth Circuit refused to apply the "continuing offense doctrine" against claims of making false representations about social security numbers. The court held the doctrine " 'should be applied in only limited circumstances ... [in which] the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime

involved is such that Congress must assuredly have intended that it be treated as a continuing one.' " 978 F.2d at 1180 (citing *Toussie,* 397 U.S. at 115, 90 S.Ct. at 860). The *Payne* court concluded nothing in the plain language of the statute concerned nor the nature of the crime itself supported the government's contention that Congress intended it to be a continuing offense. *Id.*

In *Toussie,* the defendant was prosecuted for failing to register for the draft and moved to dismiss on statute of limitations grounds because the prosecution was commenced more than five years after he was initially required to register. The lower courts interpreted the statute, requiring all citizens between eighteen and twenty-six years to register, as imposing a continuing duty to register until age twenty-six. The Supreme Court reversed, concluding that nothing in the statutory language or in the nature of the crime compelled the conclusion that failing to register was a continuing offense. *Toussie,* 397 U.S. at 120–22, 90 S.Ct. at 863–64.

Telco urges me to be guided by *Payne* and *Toussie.* Acknowledging that those case concerned criminal statutes, Telco cites *3M,* in which the D.C. Circuit noted "[f]ines, penalties and forfeitures, whether civil or criminal, may be considered a form of punishment." 17 F.3d at 1460. Telco asserts the plain language of the CWA does not create a continuing violation when it states: "the discharge of any pollutant by any person shall be unlawful." 33 U.S.C. § 1311(a). The CWA defines the "discharge" as "a discharge of a pollutant, and the discharge of pollutants." *Id.* § 1362(16). Telco maintains the Act makes the *act of discharging* a violation and that once the act is complete, the discharge is complete. Telco likens § 1311(a) of the CWA to the statute in *Payne* which said nothing about a "continuing violation", and argues there is nothing in the legislative history or purpose of the CWA that compels one to depart from established principles of statutory construction so as to read a "continuing violation" into the Act.

The government responds the decisions in *Payne* and *Toussie* are limited to statutes of limitation in criminal cases and the inquiry for determining whether a criminal offense

constitutes a "continuing violation" for statutes of limitations purposes does not apply to civil environmental cases. The government cites *United Airlines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977) in support of its statement that the Supreme Court has considered "continuing violation" allegations raised in response to statute of limitations defenses in civil cases without any reference to *Toussie.* Notably, in *Evans,* the court held that continuing impact from past violations is not actionable.

In *Evans,* an employee of United Airlines was dismissed under company policy when she married. The policy was later declared to be in violation of Title VII. After reinstatement, Evans sought consideration for seniority purposes for the years she was absent from her job. She alleged a denial of seniority benefits during the period in which the company illegally kept her from working was a continued violation of her rights. The Supreme Court disagreed, holding, if the company's present policy did not discriminate, Evans could not seek relief for past violations (then time-barred) having a present adverse impact. "[T]he emphasis should not be placed on mere continuity; the critical question is whether any present violation exists." *Evans,* 431 U.S. at 558, 97 S.Ct. at 1889.

Here, the government seeks injunctive relief and civil penalties against Telco for discharging pollutants in violation of the CWA, 33 U.S.C. § 1311(a). Telco is not presently discharging pollutants, and thus no present or continuing violation exists for the purpose of the statute of limitations. The fact that a continuing impact exists from Telco's past violations does not render the violation continuing. *See Evans,* 431 U.S. at 558, 97 S.Ct. at 1889.

The government notes the express congressional purpose of the CWA is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). It argues the statute provides for penalties and injunctive relief and Congress must have intended the offense of

illegally filling a wetland and not taking corrective action to be treated as a continuing one.[1]

It is undisputed the damage caused by filling wetlands continues long beyond the actual discharge. Nevertheless, to adopt the government's position, would be to rob 28 U.S.C. § 2462, the agreed statute of limitations provision, of any meaning in the CWA context. Section 2462 provides: "an action ... for the enforcement of any civil fine, penalty ... shall not be entertained unless commenced within five years from the date when the claim first accrued." *Id.* If the statute of limitations were to begin to run only when the defendant has removed fill and restored the wetland, it might never begin to run at all.

The comments in *3M* are pertinent:

The statute of limitations [28 U.S.C. § 2642] is aimed exclusively at restricting the time within which actions may be brought to recover fines, penalties and forfeitures. Fines, penalties and forfeitures, whether civil or criminal, may be considered a form of punishment. In an action for a civil penalty, the government's burden is to prove the violation; injuries or damages resulting from the violation are not part of the cause of action; the suit may be maintained regardless of damage. Immediately upon violation, EPA may institute the proceeding to have the penalty imposed.... Because liability for the penalty attaches at the moment of violation, one would expect this to be the time when the claim for the penalty "first accrued."

*3M,* 17 F.3d at 1460–61.

◼ I conclude, for the purpose of the statute of limitations under 28 U.S.C. § 2462, the unlawful discharge of pollutants under the CWA, 33 U.S.C. § 1311, does not constitute a continuing violation; the five year statute begins to run at the time of the discharge. Any contrary interpretation would render § 2462 nugatory, a position neither party advances.

---

1. The government's attempted analogy of the filling of wetlands to a public nuisance without distinguishing between continuing and permanent nuisances and without any reference to case law in the statute of limitations context is unhelpful.

**B.** *Equitable Tolling.*

█ The government next argues the five year statute of limitations was equitably tolled during the negotiations process leading to the proposed consent decree. I disagree.

The Tenth Circuit has allowed equitable tolling only where a plaintiff was " 'actively misled or lulled into inaction.' " *Jarrett v. US Sprint Communications Co.,* 22 F.3d 256, 260 (10th Cir.1994) (citing *Johnson v. United States Postal Serv.,* 861 F.2d 1475, 1481 (10th Cir.1988), *cert. denied,* 493 U.S. 811, 110 S.Ct. 54, 107 L.Ed.2d 23 (1989). I have held active misleading on the part of the defendant is a prerequisite to imposing the doctrine of equitable tolling. *Woods v. Denver Department of Revenue,* 818 F.Supp. 316, 318 (D.Colo.1993).

The government cites various Ninth Circuit cases and suggests I adopt that circuit's approach. Even if I were so inclined, which I am not, I would not be at liberty to do so. Moreover, the cases cited, found the inability to file suit due to factors beyond one's control to be a critical prerequisite to the equitable tolling of the period of limitations. *See Mt. Hood Stages, Inc. v. Greyhound Corp.,* 616 F.2d 394, 399 (9th Cir.), *cert. denied,* 449 U.S. 831, 101 S.Ct. 99, 66 L.Ed.2d 36 (1980) (running of statute of limitations tolled during pendency of related proceedings before the Interstate Commerce Commission where the resolution of certain issues, within the primary jurisdiction of the Commission, "was required before the court could address the immunity question")[2]; *Seattle Audubon Society v. Robertson,* 931 F.2d 590, 596 (9th Cir.1991), *rev'd on other grounds,* 503 U.S. 429, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992) (where "external forces than the plaintiff's lack of diligence, account for the failure to file a timely claim, equitable tolling is proper.")

Applying the law of the Tenth Circuit, there is no evidence that Telco misled the United States or lulled it into inaction so as to warrant a tolling of the statute. More-over, the government's assertion that public policy favors equitable tolling because it encourages resolution of violations under the Clean Water Act by negotiation rather than adjudication has been rejected in a similar case. In *Northwest Envtl. Defense Center v. Unified Sewerage Agency,* 30 Env't Rep.Cas. [BNA] 1117, 1989 WL 81608 (D.Ore.1989), defendant sought summary judgment, claiming that some of plaintiffs' claims brought in a citizen suit under the CWA were barred by the applicable statute of limitations, 28 U.S.C. § 2462.

Plaintiffs argued the statute had been tolled because the parties had been engaged in settlement negotiations during the period between the service of plaintiffs' notice of intent to sue and the filing of the complaint. In rejecting this argument, the court found "where there is no evidence of inequitable behavior by the defendant, the general policy favoring settlement of disputes does not provide sufficient reason to equitably toll [sic] the limitation period under the Clean Water Act." *Id.* at 1120.

I conclude the statute of limitations was not equitably tolled in this case.

**C.** *Injunctive Relief.*

█ Finally, the government asserts, even if its civil penalties claim is barred by 28 U.S.C. § 2462, it does not affect the claim for injunctive relief. This issue was addressed in *United States v. Windward Properties, Inc.,* 821 F.Supp. 690, 693 (N.D.Ga.1993) where the United States sought penalties and injunctive relief pursuant to the CWA. The court noted: "The majority of courts that have considered the question, including the United States Supreme Court, have held that when legal and equitable relief are available concurrently (i.e., when an action at law or equity could be brought on the same facts), 'equity will withhold its relief ... where the applicable statute of limitations would bar the concurrent legal remedy.' " *Id.* (quoting *Cope v. Anderson,* 331 U.S. 461,

**2.** Notably, the holding in *Mt. Hood* is "now regarded as at best a very narrow ruling, at worst a wholly anomalous decision. Subsequent cases have made clear that the equitable tolling theory of *Mt. Hood* applies only when resort to an agency is a jurisdictional prerequisite to seeking review in federal court...." *Higgins v. New York Stock Exchange, Inc.,* 942 F.2d 829, 833 (2d Cir.1991).

464, 67 S.Ct. 1340, 1341, 91 L.Ed. 1602 (1947)).

The *Windward* court distinguished the case of *Holmberg v. Ambrecht,* 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946) which held the statute of limitations does not apply to a claim for equitable relief, on the grounds that *Holmberg* involved a situation where the sole available remedy was in equity. *Windward,* 821 F.Supp. at 693 n. 4. The court cited *Russell v. Todd,* 309 U.S. 280, 289, 60 S.Ct. 527, 532, 84 L.Ed. 754 (1940) which contrasted the rule in exclusive and concurrent remedy situations and concluded that in a concurrent remedy situation *Holmberg* does not control. *Windward,* 821 F.Supp. at 693 n. 4.

The government relies on *United States v. Hobbs,* 736 F.Supp. 1406, 1410 (E.D.Va.1990), an enforcement action under the CWA, in which the court held the statute of limitations in 28 U.S.C. § 2462 applies only to actions for civil penalties and not to an injunctive relief claim. The *Hobbs* court relied solely on cases in which an equitable remedy was the only remedy at issue. *See, e.g. Holmberg,* 327 U.S. at 392, 66 S.Ct. at 582; *NCWF,* 29 Env't Cas.Rep. at 1941. It made no reference to cases in which legal and equitable relief are sought in the same complaint and did not cite the leading case of *Cope v. Anderson,* 331 U.S. 461, 464, 67 S.Ct. 1340, 1341–42, 91 L.Ed. 1602 (1947).

In this case, the government seeks legal relief in the form of civil penalties and equitable relief in the form of an injunction, based on the same facts. I determine the statute of limitations bars both.

### IV. *Conclusion.*

For the reasons stated above, I grant Telco's motion for partial summary judgment based on statute of limitations grounds. Accordingly,

IT IS ORDERED THAT Defendants' Motion for Partial Summary Judgment is GRANTED.