**A–C REORGANIZATION TRUST and The Edison M. Boerke Trust, Plaintiffs,**

v.

**E.I. DuPONT DE NEMOURS & CO., Defendant/Third–Party Plaintiff,**

v.

**SVEDALA INDUSTRIES, INC., Defendant/Third–Party Defendant,**

**TENNESSEE GAS PIPELINE COMPANY and EPEC Polymers, Inc., f/k/a Tenneco Polymers, Inc., as successors to the Newport Company, the Newport Chemical Corporation, Newport Industries, and Heyden–Newport Chemical Corporation, Defendants/Third–Party Defendants and Fourth Party Plaintiffs,**

v.

**REICHHOLD CHEMICALS, INC., Fourth–Party Defendant.**

No. 94–C–574.

United States District Court, E.D. Wisconsin.

June 27, 1997.

Paul E. Bargren, Robert A. Dupuy, Linda E. Benfield, Lisa S. Neubauer, Foley & Lardner, Milwaukee, WI, David R. Tennyck, Jeffrey L. Leavell, S.C., Racine, WI, for Plaintiffs.

Lawrence W. Falbe, James R. Morrin, Leo P. Dombrowski, James T. Nyeste, Wildman, Harrold, Allen & Dixon, Chicago, IL, for Defendant E.I. Du Pont Nemours & Company.

James A. Vroman, Stephen A.K. Palmer, Christina M. Riewer, Jenner & Block, Chicago, IL, for Defendants Tennessee Gas Pipeline Company and Tenneco Polymers, Inc.

Thomas N. Harrington, Cook & Franke, Milwaukee, WI, for Defendant Svedala Industries.

William A. Ruskin, Adam J. Freedman, Schulte Roth & Zabel, New York City, Frank J. Daily, Christopher H. Kallaher, Quarles & Brady, Milwaukee, WI, for Fourth–Party Defendant Reichhold Chemicals, Inc.

## DECISION AND ORDER

STADTMUELLER, Chief Judge.

This action includes causes of action under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, and other theories, arising from the presence of wastes at a site in Oak Creek, Wisconsin ("Oak Creek Facility"). Before the court is the motion to amend the complaint of plaintiffs A–C Reorganization Trust ("A–C Trust") and The Edison M. Boerke Trust ("Boerke Trust") (collectively, "Plaintiffs"). Plaintiffs seek to add a claim under 42 U.S.C. § 6972(a)(1)(B), part of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901 *et seq.* Defendant/third-party plaintiff E.I. DuPont de Nemours ("DuPont") and defendants/third-party defendants EPEC Polymers, Inc. ("EPEC") and Tennessee Gas Pipeline Company ("Tennessee Gas") (together, the "Tenneco Defendants") oppose the motion to amend. The motion is fully briefed and ready for decision.

## I. LEGAL STANDARD

Once a party's leave to amend as of right expires, amendments may only be made after adverse parties consent or by leave of court, which shall be freely given as justice requires. Fed.R.Civ.P. 15(a). Consider-

ations that justify denying leave to amend include undue delay, bad faith, dilatoriness, undue prejudice, repeated failure to cure deficient pleading, and futility of the amendment. *Perrian v. O'Grady,* 958 F.2d 192, 194 (7th Cir.1992). Futility requires that an amendment cannot possibly support a valid theory of liability. *Goulding v. Feinglass,* 811 F.2d 1099, 1103 (7th Cir.), *cert. denied,* 482 U.S. 929, 107 S.Ct. 3215, 96 L.Ed.2d 701 (1987). A court can also deny amendment where litigation is artificially protracted by bad faith or absent-mindedness. *Fort Howard Paper Co. v. Standard Havens, Inc.,* 901 F.2d 1373, 1379 (7th Cir.1990). When a motion to amend is filed well after the original complaint, the party seeking amendment must substantiate it, as it is addressed to the court's discretion and "requires more to compel acceptance than the fact that the pleading sought to be added states a claim." *Glatt v. Chicago Park Dist.,* 87 F.3d 190, 194 (7th Cir.1996). In considering any delay, the court "should consider the likelihood that the new claim is being added in a desperate effort to protract the litigation and complicate the defense; its probable merit; whether the claim could have been added earlier; and the burden on the defendant in having to meet it." *Id.*

## II. FACTUAL OVERVIEW

Plaintiffs make the following allegations in their RCRA claim: Defendants' past generation of waste at and past operation and ownership of the Oak Creek Facility have given rise to an imminent and substantial endangerment to health and the environment. The conditions causing this endangerment include the presence in the soil, surface water or groundwater of solid or hazardous waste *in amounts or concentrations exceeding estab-*

lished state and federal limits, as well as the migration of these wastes toward or into Lake Michigan. Plaintiffs have met the requirements of bringing such a private claim: (1) neither the Administrator of the U.S. Environmental Protection Agency ("EPA") nor the State of Wisconsin has commenced any action, engaged in any removal or remedial action, incurred any costs, obtained any court orders, or issued any administrative orders that would bar this action under 42 U.S.C. § 6972(b)(2)(B) or (C); and (2) Plaintiffs provided 90 days notice of the claim to the EPA, Wisconsin, and defendants. 42 U.S.C. § 6972(b)(2)(A).

Testing completed by Plaintiffs in December 1996 and by the Wisconsin Department of Natural Resources ("DNR") in 1995 disclosed that soil at the Oak Creek Facility contains, in significant amounts, solid or hazardous wastes including toxic metals, toxic semi-volatile organic compounds, and toxic volatile organic compounds.[1] Plaintiffs' testing also revealed that the Oak Creek Facility's groundwater contained, in significant amounts, some of these same as well as additional solid or hazardous wastes.[2] Almost all of these wastes in the groundwater were found to be migrating toward or into Lake Michigan.[3]

In addition to Plaintiffs' allegations, there are uncontested facts relating to EPA and DNR actions regarding the site. Because Plaintiffs must substantiate the motion to amend, it is appropriate to consider these facts.

EPA's involvement with the Oak Creek Facility began in 1985, when it commenced a removal action to halt the release or threatened release of hazardous substances. Un-

---

1. Toxic metals: arsenic, cadmium, chromium, copper, lead, mercury, nickel, and zinc.

   Toxic semi-volatile organic compounds: alpha-naphthylamine, beta-naphthylamine, acenaphthylene, benzo(a)anthracene, benzo(a)pyrene, benzo(b)flouranthene, chrysene, dibenzo(a,h)anthracene, indeno(1,2,3–cd)pyrene, 2–methylnaphthalene, naphthalene, and phenanthrene.

   Toxic volatile organic compounds: benzene, ethylbenzene, toluene and xylene.

2. Toxic metals: arsenic, cadmium, chromium, lead, and mercury; toxic semi-volatile organic

compounds: alpha-naphthylamine, beta-naphthylamine, 1,2–dichlorobenzene, 2,4–dinitrotoluene, 2,6–dinitrotoluene, methylene chloride, and naphthalene; toxic volatile organic compound: benzene.

3. Toxic metals: arsenic, cadmium, chromium, lead, and mercury; toxic semi-volatile organic compounds: alpha-naphthylamine, beta-naphthylamine, 2,4–dinitrotoluene, 2,6–dinitrotoluene, and naphthalene; toxic volatile organic compound: benzene.

der EPA's and DNR's oversight, DuPont excavated the contaminated construction debris, incinerated it, and redeposited the remediated materials onto the A–C Trust parcel.

On September 28, 1995, EPA issued an Administrative Order on Consent, CERCLA § 106, 42 U.S.C. § 9606 ("Consent Order"), regarding arsenic contamination on the Boerke Trust parcel. DuPont Ex. 12. The Consent Order requires DuPont to perform an "Engineering Cost Evaluation/Cost Analysis" ("EE/CA"), which is one of the first steps in a non-time critical removal action. DuPont Ex. 11. The EE/CA's purpose to investigate the site, characterize the potential risks involved, and to "identify the scope, goals, and objective for a removal action" and is one step in the removal action process. DuPont Ex. 11 at 31, 5. EPA makes a final decision on the scope and nature of the cleanup.

In March 1996, DNR issued an order requiring DuPont and the Trusts to take immediate action to move some incinerated materials in wastewater lagoons away from an eroding lake bluff. DNR Order, Tenneco Defendants' Ex. E at 3–4. DNR stated the order was justified by the materials' imminent threat to the environment. *Id.* at 2. In addition, DuPont was to evaluate alternatives for removing, containing, or treating the thermally-treated materials located on the A–C Trust Parcel. *Id.* at 3.

### III. STATUTE OF LIMITATIONS

■ Both DuPont and the Tenneco Defendants argue that the RCRA claim is barred by the statute of limitations applicable to RCRA claims. In addition, DuPont contends that the relevant limitation on bankruptcy trustee actions bars the claim.

■ RCRA itself contains no language defining a statute of limitations. *Meghrig v. KFC Western, Inc.,* —— U.S. ——, 116 S.Ct. 1251, 1255, 134 L.Ed.2d 121 (1996). This absence may or may not mean that there is no statute of limitations for RCRA actions.

Where a federal statute contains no limitations provision, a federal court usually should apply "the most closely analogous" state statute of limitations unless it would disrupt implementation of national policies, in which case the court should apply a relevant federal time limitation. *DelCostello v. International Broth. of Teamsters,* 462 U.S. 151, 158–62, 103 S.Ct. 2281, 2287–89, 76 L.Ed.2d 476 (1983).[4] Thus, the question before the court is whether there is a "relevant" or "appropriate" statute of limitations available in state or federal law. Because § 6972(a)(1)(B) is meant to further the national policy of remedying present or future imminent harms, not to compensate for past cleanups, there is no relevant or appropriate statute of limitations for actions seeking only injunctive relief, a fundamentally equitable remedy. The court adopts essentially the same reasoning and the same result as the court in *Nixon–Egli Equipment Co. v. John A. Alexander Co.,* 949 F.Supp. 1435 (C.D.Cal.1996); *see also Agricultural Excess and Surplus Ins. Co. v. A.B.D. Tank & Pump Co.,* 1996 WL 515088, *2 (N.D.Ill., Sep.6, 1996) ("[p]ursuant to *Meghrig,* . . . the sole 'timing requirement' is that a suit may only be filed 'upon an allegation [of] . . . an imminent and substantial endangerment to health or the environment' ").

■ RCRA's citizen suit provisions do not allow for recovery of past cleanup costs in the form of legal damages or equitable restitution. *Meghrig,* —— U.S. at ——, 116 S.Ct. at 1254. Supporting this conclusion is RCRA's lack of a defined statute of limitations. *Id.* at ——, 116 S.Ct. at 1255. If the citizen suit provisions were to allow recovery for past cleanups, Congress would likely have created a statute of limitations. *Id.* Instead, Congress adopted a timing restriction such that a private party can bring suit under § 6972(a)(1)(B) only where solid or hazardous waste "may present an imminent and substantial endangerment to health or the environment." *Id.* The imminent, substantial endangerment requirement controls the tim-

---

4. An alternative view is that where no analogous or relevant state limitation applies, none should be imported from federal law. *See Teumer v.*

*General Motors Corp.,* 34 F.3d 542, 546 n. 1 (7th Cir.1994).

ing of a solely equitable § 6972(a)(1)(B) cause of action.

Defendants argue that the five year statute of limitations under 28 U.S.C. § 2462 should apply.[5] First, they point to cases adopting this statute of limitations for citizen suits under environmental statutes. Second, they argue that the availability of civil penalties means that § 2462 should apply regardless of Plaintiffs' equitable cause of action.

The cases adopting § 2462's statute of limitations are distinguishable, because they are premised upon the remedy of civil fines sought in those cases. The statute creates a five year statute of limitations for actions "for the enforcement of any civil fine, penalty, or forfeiture" where a substantive federal statute provides no statute of limitations. 28 U.S.C. § 2462. Cases adopting § 2462's statute of limitations for environmental citizen suit actions have involved claims for civil penalties. *See Sierra Club v. Chevron U.S.A., Inc.,* 834 F.2d 1517, 1521 (9th Cir. 1987) (Clean Water Act citizen suit) (citing cases which have held that § 2462 applies to citizen actions seeking the enforcement of civil penalties under the Clean Water Act); *Glazer v. American Ecology Environmental Services Corp.,* 894 F.Supp. 1029, 1044 (E.D.Tex.1995) (seeking civil penalties, as well as declaratory and injunctive relief, for violations of the Clean Air Act and RCRA); *Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.,* 913 F.2d 64, 74–75 (3d Cir.1990) (Clean Water Act case seeking civil fines), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991); *U.S. v. Walsh,* 8 F.3d 659, 662 (9th Cir.1993) (Clean Air Act case seeking civil penalties and injunctive relief), *cert. denied,* 511 U.S. 1081, 114 S.Ct. 1830, 128 L.Ed.2d 459 (1994). Where an action seeks civil penalties, § 2462 may apply by its terms, although this is not a question the court must resolve today. Here, Plaintiffs seek no civil penalties, and § 2462's plain language is no authority for adopting its statute of limitations in this case.

Furthermore, some cases applying § 2462 to RCRA have rotely analogized RCRA's citizen suit provisions to those of other environmental statutes. *Glazer,* 894 F.Supp. at 1044; *Bodne v. Geo. A. Rheman Co., Inc.,* 811 F.Supp. 218, 220 (D.S.C.1993) (§ 2462 applied to RCRA claim). Though there are similarities, courts must at least consider RCRA's unique purposes before finding that another statute is relevant or analogous. The imminent and substantial endangerment restriction at least suggests that § 2462, imposing a five year limitation on civil penalty actions and saying nothing about imminent environmental harm, may be inapplicable in any RCRA case.

Defendants' second, more intriguing argument, is that where a statute allows both legal and equitable remedies, a legal statute of limitations applies even if a plaintiff seeks only equitable relief. In *Cope v. Anderson,* 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947), the Supreme Court held that where "only the scope of the relief sought and the multitude of parties sued ... gives equity concurrent jurisdiction to enforce the legal obligation here asserted ... equity will withhold its relief ... where the applicable statute of limitations would bar the concurrent legal remedy." *Id.* at 463–64, 67 S.Ct. at 1341. In *Cope,* plaintiffs brought suit in equity to enforce the liabilities of shareholders in a company holding an insolvent national bank. Under the announced rule, the Court applied state statutes of limitations. *Id.* at 463, 67 S.Ct. at 1341. Relying on *Cope,* the Seventh Circuit later held that where "[e]quitable jurisdiction is concurrent [with legal jurisdiction] even though plaintiff chooses to forego damages and to seek only equitable relief.... [I]f an action at law for damages would be barred, so too is the action in equity." *Nemkov v. O'Hare Chicago Corp.,* 592 F.2d 351, 355 (7th Cir.1979). Several cases have applied this reasoning to impose § 2462's statute of limitations to Clean Water Act suits even where plaintiffs sought no civil penalties. *U.S. v. Windward Properties, Inc.,* 821 F.Supp. 690, 693 (N.D.Ga.1993); *U.S. v. Telluride Co.,* 884 F.Supp. 404, 409–10 (D.Colo.1995). Presumably using such reasoning, one court applied it to a RCRA § 6972(a) suit. *Eastman v.*

---

**5.** Neither party points to a relevant or analogous state statute of limitations.

*Brunswick Coal & Lumber Co.*, 44 E.R.C. 1521, 1528 (D.Me.1996).

In light of *Meghrig*, applying *Cope* and *Nemkov* to this RCRA case would put law's cart before equity's horse. Those cases were about equity suits arising from legal obligations and about plaintiffs who tried to evade legal statutes of limitations by unsuccessfully portraying their cases as equitable, not legal, in nature.

By contrast, RCRA's citizen suit provisions create a primarily equitable remedy to enjoin contributors to solid or hazardous wastes threatening health or environment. True, a citizen enforcer may seek imposition of civil penalties, 42 U.S.C. § 6972(a) (allowing civil penalties under §§ 6928(a), (g)); *Tanglewood East Homeowners v. Charles–Thomas, Inc.*, 849 F.2d 1568, 1574 (5th Cir.1988); *Acme Printing Ink Co. v. Menard, Inc.*, 891 F.Supp. 1289, 1303 (E.D.Wis.1995); *U.S. Dept. of Energy v. Ohio*, 503 U.S. 607, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992) (assuming § 6972(a) gives jurisdiction to impose civil penalties in an action brought by private party); these are legal remedies. *Tull v. U.S.*, 481 U.S. 412, 422–25, 107 S.Ct. 1831, 1838–39, 95 L.Ed.2d 365 (1987). However, those penalties are payable to the United States, not to the plaintiff, so compensation cannot be their primary function. 42 U.S.C. § 6928(g); *325–343 E. 56th Street Corp. v. Mobil Oil Corp.*, 906 F.Supp. 669, 685 (D.D.C.1995).[6] Instead, the civil penalties' major purpose is deterrence. *U.S. v. Bethlehem Steel Corp.*, 829 F.Supp. 1047, 1056 (N.D.Ind.1993) (citing cases reaching the same conclusion). Thus, § 6972(a) is meant to further RCRA's "national policy ... to minimize present and future threat to human health and the environment" through injunction and deterrence, not to impose legal obligations to citizen plaintiffs. *Meghrig*, —— U.S. at ——, 116 S.Ct. at 1255. There is no reason to apply the *Cope–Nemkov* rule, which is meant to bar untimely suits that are really suits at law, not equity. This is because RCRA citizen suits really are equity suits.

*Catellus Devel. Corp. v. L.D. McFarland Co.*, 910 F.Supp. 1509 (D.Or.1995), is no authority for adopting CERCLA's statute of limitations for § 6972(a) suits. That decision relied upon the Ninth Circuit's erroneous holding that § 6972(a) provided a cause of action for recovery of past clean-up costs. *KFC Western v. Meghrig*, 49 F.3d 518, 521 (9th Cir.1995), *rev'd, Meghrig*, —— U.S. ——, 116 S.Ct. 1251, 134 L.Ed.2d 121. Under that holding, the *Catellus* court reasoned that CERCLA's cost recovery statute of limitations was the one most relevant to a RCRA cost recovery action. 910 F.Supp. at 1518. However, when the Supreme Court reversed *KFC Western* and held RCRA § 6972(a) did not allow a past cost recovery action, it also destroyed any relation to CERCLA's cost recovery provisions.

It remains possible that a § 6972(a)(1)(B) action is subject to the timeliness limitation of the equitable doctrine of laches. *See Nixon–Egli*, 949 F.Supp. at 1441. Presumably a private "attorney general" would be subject to the doctrine of laches to the same extent as the government would be. However, as the parties have not squarely presented that issue and its resolution is unnecessary to the court's decision, the court will not address it. In any case, such a fact-laden determination would be more appropriate to a summary judgment motion. Because there is no statute of limitations applicable to Plaintiffs' RCRA claim, the court need not address DuPont's arguments based upon bankruptcy law's effect on statutes of limitations.

## IV. EPA AND DNR ACTION

RCRA bars private citizen suit under § 6972(a)(1)(B) if the EPA is involved in certain removal or remedial actions at the site. 42 U.S.C. § 6972(b)(2)(B).[7] There is

---

**6.** "Thus while civil penalties payable to the federal government are a significant part of the enforcement strategy, monetary damages payable to private plaintiffs are not.... These citizen suit provisions do not offer any 'private rewards,' because as private attorney generals, citizen-

plaintiffs are supposed to be guided by the public benefits." *Id.* at 685 (internal citations omitted).

**7.** Removal action: "The cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous

no indication that EPA has undertaken a removal or remedial action, so subsections (ii) and (iii) are inapplicable. Moreover, the existence of the CERCLA § 106 Consent Order indicates EPA has moved beyond the commencement and diligent prosecution of a CERCLA § 106 action, so subsection (i) is inapplicable. The only provision that may apply now is subsection (iv), which states:

No action may be commenced under subsection (a)(1)(B) of this section if the Administrator, in order to restrain or abate acts or conditions which may have contributed to or are contributing to the activities which may present the alleged endangerment . . . has issued an administrative order . . . under section 106 of [CERCLA] . . . pursuant to which a responsible party is diligently conducting a removal action, Remedial Investigation and Feasibility Study (RIFS), or proceeding with a remedial action.

42 U.S.C. § 6972(b)(2)(B)(iv). In addition, "actions under subsection (a)(1)(B) are prohibited only to the scope and duration of the [section 106] administrative order." *Id.*

Assuming that a responsible party is diligently conducting a removal action (there is clearly no remedial action nor RIFS), the question is whether Plaintiffs' RCRA claim is outside the "scope and duration" of the § 106 order. "[T]he 'scope and duration' clause manifests Congress's desire to permit citizen suits to be brought to remedy imminent and substantial dangers which are not being addressed by existing section 106 orders. It is the scope of the abatement action that is relevant. . . ." *Acme Printing Ink Co. v. Menard, Inc.*, 881 F.Supp. 1237, 1245 (E.D.Wis.1995); *Coburn v. Sun Chemical Corp.*, 1988 WL 120739, *12, 28 E.R.C. 1665(E.D.Pa.1988) (discussing legislative history and concluding citizen suit could proceed where order dealt with underground contamination and plaintiffs sought surface cleanup);

*Fishel v. Westinghouse Elec. Corp.*, 617 F.Supp. 1531, 1539 (M.D.Pa.1985) (allowing citizen suit addressing subsurface contamination and drinking water where EPA ordered removal of surface wastes).

There are three ways the RCRA claim may escape the § 6972(b)(2)(B) bar. Initially, there are two possible ways this RCRA claim could go beyond the administrative order's scope. First, Plaintiffs have identified ground water contamination and claim the Consent Order speaks only to surface contamination. Second, Plaintiffs have identified numerous solid or hazardous wastes and claim the Consent Order addressed only arsenic contamination at the Oak Creek Facility. Third, and alternatively, if the RCRA claim relates back to claims made before the Consent Order issued, the bar would not operate. *Acme Printing*, 881 F.Supp. at 1247–48.

### A. Scope as to Groundwater

■ Although the EPA–supervised removal at the site may ultimately extend to the groundwater, it is premature to make such a determination. DuPont claims that the Consent Order covers groundwater, because it requires compliance with the EPA document "Guidance on Conducting Non–Time–Critical Removal Actions Under CERCLA" ("Guidance Document"). DuPont Ex. 11. Under the *Guidance Document*, the EE/CA that DuPont is conducting is only an information-gathering investigation preliminary to a response. *See id.* at 19–20. The court's examination of the "Guidance" document revealed no requirement that the responsible party investigate beyond the problems already identified by EPA in its initial site assessment. Here, the Consent Order identified only surface arsenic contamination.

The Consent Order does make additional provisions as to investigating potential

---

substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release." 42 U.S.C. § 9601(23).

Remedial action: "those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment." *Id.* at 24.

groundwater contamination. DuPont's EE/CA Report must be in accordance with the attached Scope of Work ("SOW"). The SOW requires support sampling to include "the landfill, the wetland area, and the intermittent stream." SOW at 1. In addition, the required sampling plan must address "specific hydrologic [and] hydrogeologic ... characterization methods" that could address the groundwater issue. *Id.* In the Data Gap Description, DuPont must identify what areas of the site "require additional data to determine the extent of contamination for purposes of defining the extent of releases or threat of releases of hazardous substances, pollutants or contaminants.... The sampling shall include a minimum of four ground water samples...." *Id.* at 2. In mandating a hydrogeologic investigation, the SOW notes that "[t]he intent of this plan is to determine if the groundwater has been contaminated by pollutants from the Site." *Id.*

Although the Consent Order contemplates further testing of the groundwater, nothing indicates that the actual removal or ultimate remediation will involve the groundwater. The better course is to allow the RCRA claim to stand for now. If defendants can ultimately show that the EPA-supervised removal or remediation would adequately address the alleged groundwater contamination, then the RCRA claim might be dismissed. If, however, the procedures do not contemplate removal or remediation of any actual groundwater contamination, Plaintiffs should be able to proceed with their claim and seek injunctive relief to achieve a clean-up of the groundwater contamination.

### B. Scope as to Contaminants Other than Arsenic

■ It is even less clear whether the Consent Order addresses only arsenic or other contaminants as well. The Guidance Document filed by DuPont says nothing about testing for wastes other than those already suspected. The Consent Order is ambiguous. Some parts suggest a broad investigation into other potential wastes. The SOW instructs DuPont to "include a program for further characterizing the waste materials at the Site. This shall include an analysis of current information/data on past disposal

practices at the Site." SOW at 2. As indicated above, the Data Gap Description also refers to determining the extent of contamination of "hazardous substances, pollutants or contaminants." *Id.* The Hydrogeologic Investigation refers several times to "pollutants" and "contaminants." *Id.* By contrast, the Soils and Sediments and Surface Water Investigations refer only to "contamination." *Id.* at 2–3. Nothing in the Consent Order explicitly states that DuPont must determine whether wastes other than arsenic may be at the Oak Creek Facility.

On the other hand, there is little to back up Plaintiffs' allegations that contaminants other than arsenic pose an imminent and substantial danger. As indicated above, the delay in adding the RCRA claim means that Plaintiffs ought to be able to substantiate the new claim to some degree. Nothing in the materials does this. In fact, the April 7, 1997 "Focused Site Inspection Results," Tenneco Defendants' Ex. G, shows only arsenic contamination and seems to belie any significant contamination by other materials.

On this inadequate record, which the parties have had ample opportunity to develop, the court holds that because the CERCLA § 106 Consent Order's scope may not encompass Plaintiffs' claim of imminent and substantial danger to groundwater and Lake Michigan from arsenic and other wastes, the RCRA claim is not barred by 42 U.S.C. § 6972(b)(2)(B). While Plaintiffs have not factually substantiated their claims, defendants have not shown that the Consent Order addresses contaminants beyond arsenic. Likewise, the DNR Order does not address groundwater. Because the RCRA citizen suit provision is meant to protect the public interest, the more prudent course is to allow the RCRA claim so long as it may afford better protection of the public health and environment than the EPA-initiated action will. Plaintiffs' allegations of an imminent and substantial danger are more than conclusory, as they are based upon specific allegations of testing results and a migration of contaminated groundwaters toward and into Lake Michigan. It is appropriate to allow adversary testing of these factual propositions.

In sum, it is uncertain that work under the Consent Order will ultimately address groundwater contamination or contaminants other than arsenic. Thus, Plaintiffs' § 6972(a) claim goes beyond the scope and duration of the CERCLA § 106 Consent Order. Because injunctive relief pursuant to the RCRA claim could afford the additional relief of cleanups of all groundwater contaminants at the Oak Creek Facility, the Consent Order does not preclude Plaintiffs' RCRA claim under 42 U.S.C. § 6972(b)(2)(B).

### C. Relation Back

■ Defendants do not contend that the RCRA claim does not relate back to claims preceding the Consent Order. Relation back under Fed.R.Civ.P. 15(c) requires that (1) the new claim's allegations arise out of the same conduct, transaction or occurrence as the prior claims; and, potentially, that (2) the parties have received adequate notice so as not to be prejudiced; and (3) the parties to be added ought to have known that, but for a mistake, they would have been timely named. Fed.R. Civ.P. 15(c); *see Acme Printing,* 881 F.Supp. at 1246.

In *Acme Printing,* the court held that where an amendment relates back to a time prior to a CERCLA § 106 order, § 6972(b)(2)(B)(iv) does not bar the amendment. 881 F.Supp. at 1247. After a careful analysis of RCRA's statutory language, legislative history, and case law, the court concluded that "Congress did not intend this provision to oust jurisdiction over an ongoing lawsuit, but instead intended to prohibit the commencement of a citizen suit after such orders have been issued." *Id.* Where a suit is on-going, the proper solution is for EPA to intervene. *Id.*

Here, the CERCLA § 106 Consent Order issued on September 28, 1995. DuPont was named by Plaintiffs in the original complaint, while the Tenneco Defendants were effectively named in Plaintiffs' amended complaint on May 17, 1995. In the circumstances of this case, the requirements of Rule 15(c) appear to be satisfied, and the relation back of the RCRA claim allows it to be added now.

## V. INCIDENCE TO CERCLA CLAIM

■ DuPont argues that the amendment should not be allowed because the primary purpose of the RCRA claim is to allow Plaintiffs to get attorneys' fees, not to vindicate the public interest. *See Truck Components, Inc., v. Beatrice Co.,* 1996 WL 402520, *14–15 (N.D.Ill.1996); *Fallowfield Dev. Corp. v. Strunk,* 1993 WL 157723, *12–16 (E.D.Pa. 1993). *Truck Components,* addressing attorneys' fees, was decided after defendants won a summary judgment motion. *Fallowfield* was decided after a jury trial and a non-jury trial. On the minimal factual record in the present case, the court cannot conclude the only significant motivation for the RCRA claim is to win attorneys' fees. Moreover, the Seventh Circuit has implied that § 6972(a)'s allowance of a citizen suit by "any person" means that motivation for the recovery of attorney's fees is no bar to bringing such a suit. *AM Intern., Inc. v. Datacard Corp.,* 106 F.3d 1342, 1349 (7th Cir.1997). Because it is too early to ascertain Plaintiffs' motives in bringing the RCRA claim, and because these motives may be irrelevant in any case, the court rejects DuPont's argument.

## VI. PREJUDICE

■ The Tenneco Defendants argue that they will suffer undue prejudice from the RCRA claim. They claim that the new claim will require additional, costly discovery that could have been completed had Plaintiffs more diligently conducted testing at the Oak Creek Facility and brought their RCRA claim earlier.

New claims are always likely to require additional discovery. The costs of such discovery are generally not prejudicial per se, and here it is not clear that Plaintiffs have been dilatory in bringing the RCRA claim. Moreover, the Tenneco Defendants have merely countered with vague and general allegations of additional discovery requirements. These are not specific enough to demonstrate actual prejudice. To the extent that additional discovery is required due to the newly-discovered contamination at the Oak Creek Facility, additional discovery is appropriate.

More importantly, the Tenneco Defendants have not disclosed any potential prejudice to their position on the merits of this litigation. It is instructive that one case the Tenneco Defendants cite dealt with amendments after trial, and another dealt with an attempt to amend when existing claims were dismissed. *Fort Howard Paper,* 901 F.2d at 1381; *Glatt,* 87 F.3d at 193. Neither extreme is present here. This complex case, though old and not getting any younger, is still in a preliminary phase. Thus, the court concludes the Tenneco Defendants will suffer no undue prejudice by the amendment. Accordingly,

**IT IS ORDERED** that Plaintiffs' motion to amend be and the same is hereby **GRANTED.**