David LEFEBVRE, d/b/a The
Starting Line, Plaintiff,

v.

CENTRAL MAINE POWER
COMPANY, Defendant.

No. Civ. 97–117–B.

United States District Court,
D. Maine.

May 26, 1998.

66

Paul M. Boots, Portland, ME, Marcia J. Cleveland, Brunswick, ME, for Plaintiff.

R. Scott Mahoney, Central Maine Power Company, Augusta, ME, John J. Aromando, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, ME, for Defendant.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

Plaintiff, David Lefebvre, d/b/a The Starting Line, brings this action against Defendant, Central Maine Power Company, in connection with Defendant's alleged disposal of hazardous substances on property currently owned by Plaintiff (the "Site"). Plaintiff asserts claims under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.* (Count I), and the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.* (Count II). Plaintiff also brings a claim for strict liability on account of Defendant's ultrahazardous activity at the Site (Count III), and a claim for common law contribution (Count IV). Defendant has responded with a CERCLA cost recovery counterclaim against Plaintiff. The Court has before it Defendant's Motion for Summary Judgment on all counts of Plaintiff's Complaint and its Counterclaim, and Plaintiff's Motion for Partial Summary Judgment on Counts I, II, and III of its Complaint, and Defendant's Counterclaim. For the reasons set forth below, both Defendant's motion and Plaintiff's motion are DENIED.

## BACKGROUND

Plaintiff is the current owner and operator of property located on Preble Street in Waterville, Maine, which serves as the location for his business, "The Starting Line," a motorcycle and snowmobile repair shop. From approximately 1919 to 1949, Defendant owned and operated a manufactured gas plant on the Site known as the Waterville Gas Works. During this time, Defendant generated and disposed of hazardous waste on the property and, in particular, coal gas waste. In 1949, Defendant sold the Water-

ville Gas Works to the Augusta & Waterville Gas Company which continued to operate the manufactured gas plant until at least 1951. In 1959, the Augusta & Waterville Gas Company sold the property to the Maine Gas & Appliance Company, which, in turn, sold the property to the Magnum Development Corporation. The Magnum Development Corporation sold the property to Plaintiff on February 1, 1985.

At the time he purchased the property, Plaintiff was evidently unaware it was contaminated with hazardous waste. Plaintiff allegedly first learned of the contamination in 1988, when Scott Paper Company ("Scott") began work to improve the culvert that carries Holland Brook under the Central Maine Railway adjacent to Plaintiff's property. In the process of excavating for this culvert, Scott encountered soil contaminated with coal tar waste, and without Plaintiff's permission, stockpiled this contaminated soil on Plaintiff's Site. When Scott removed this soil, a test pit revealed the presence of coal gas waste on Plaintiff's property. In March 1990, Scott and Plaintiff settled claims associated with Scott's work and the hazardous material.

In 1988, Plaintiff hired Brown Engineering to document the risk of flooding at the Site, and to investigate other potentially responsible parties ("PRPs"). In 1995, Plaintiff hired Field Services, Inc. to define and estimate the cost of any necessary remedial options. Defendant has also allegedly incurred costs in connection with investigating the contamination at the Site. To date, however, no remedial action has been taken at the Site.

## SUMMARY JUDGMENT

Summary judgment is appropriate in the absence of a genuine issue of any material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine for summary judgment purposes, if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is one that has "the potential to affect the outcome of the suit under applicable law."

*Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 703 (1st Cir.1993). Facts may be drawn from "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Fed. R.Civ.P. 56(c). For the purposes of summary judgment, the Court views the facts in the light most favorable to the nonmoving party. *See McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995).

## DISCUSSION

### A. Count I—RCRA

In Count I, Plaintiff asserts a claim for injunctive relief pursuant to the citizen suit provision of RCRA, 42 U.S.C. § 6972(a)(1)(B). Under this provision, a private plaintiff may bring a civil claim against "any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste *which may present an imminent and substantial endangerment to health or the environment.*" 42 U.S.C. § 6972(a)(1)(B) (emphasis added). Defendant contends that it is entitled to summary judgment on this claim because Plaintiff's claim is barred by the statute of limitations and because Plaintiff has failed to establish that the Site may present "an imminent and substantial endangerment to health or the environment." Plaintiff moves for summary judgment on this claim on the basis that the Site currently presents an imminent and substantial endangerment. The Court is persuaded that neither party is entitled to summary judgment on this Count.

### 1. Statute of Limitations

RCRA itself does not contain a statute of limitations for citizen suits. Generally, where a federal statute provides no statute of limitations courts apply the "most closely analogous" state statute of limitations unless it would "frustrate or interfere with the implementation of federal policies," in which case courts apply a relevant federal limitations period. *See Eastman v. Brunswick*

*Coal & Lumber Co.,* No. CIV. 95–255–P–C, 1996 WL 911200, at *5 (D.Me. Apr.19, 1996) (citing *Posadas de Puerto Rico Assocs., Inc. v. Asociacion de Empleados de Casino de Puerto Rico,* 873 F.2d 479, 480 (1st Cir. 1989)). Defendant contends that either the federal five-year statute of limitations set forth in 28 U.S.C. § 2462, or Maine's six-year limitations period for civil actions set forth in 14 M.R.S.A. § 752 applies to this claim. Under either of these two periods, Defendant argues, Plaintiff's claim is barred. Plaintiff, relying on the Supreme Court's reasoning in *Meghrig v. KFC Western, Inc.,* 516 U.S. 479, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996), responds that there is no applicable limitations period for a citizen suit under RCRA.

The Court finds Plaintiff's response persuasive. In *Meghrig,* the Supreme Court held that the citizen suit provision of RCRA does not provide a cause of action to recover the prior cost of cleaning up hazardous waste, when that waste does not pose an endangerment to health or the environment at the time the suit is brought. 516 U.S. at 481, 116 S.Ct. 1251. The Court reasoned that RCRA's citizen suit provision "was designed to provide a remedy that ameliorates present or obviates the risk of future 'imminent' harms, not a remedy that compensates for past cleanup efforts." *Id.* at 486, 116 S.Ct. 1251. The Court bolstered its holding by noting the differences between the enforcement provisions of RCRA and the cost recovery provisions of CERCLA, one difference being that "unlike CERCLA, RCRA contains no statute of limitations." *Id.*

■ While the *Meghrig* Court's observation that RCRA contains no statute of limitations was dicta, several district courts have relied on the Court's reasoning in concluding that there is no statute of limitations applicable to a RCRA cause of action. *See A–C Reorganization Trust v. E.I. DuPont de Nemours & Co.,* 968 F.Supp. 423, 427–28 (E.D.Wis.1997); *Nixon–Egli Equipment Co. v. John A. Alexander Co.,* 949 F.Supp. 1435, 1440–41 (C.D.Cal.1996). These courts have found the federal five-year limitations period

set forth in 28 U.S.C. § 2462 inapplicable to a RCRA case such as this one which does not seek civil penalties, because section 2462 creates a limitations period "for the enforcement of any civil fine, penalty, or forfeiture," and a RCRA action "only seeking an order to compel other parties to help with clean-up is not akin to an action seeking a civil fine or penalty." *Nixon–Egli,* 949 F.Supp. at 1440; *see also A–C Reorganization Trust,* 968 F.Supp. at 427–28 (RCRA suits are primarily suits in equity). The Court is persuaded by the reasoning of these decisions, and finds that the timing of Plaintiff's RCRA action is controlled only by the requirement that the hazardous waste present "an imminent and substantial endangerment to the health or the environment."[1] *See A–C Reorganization Trust,* 968 F.Supp. at 427–28. In so holding, the Court acknowledges and respectfully disagrees with the contrary holding set forth in *Eastman,* 1996 WL 911200, at *5.

2. Imminent and Substantial Endangerment

■ In order to succeed on his RCRA claim, Plaintiff must establish that the hazardous waste on the Site "may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). "To prove that an imminent and substantial endangerment may exist, [Plaintiff] need not prove actual harm; [he] need only show a risk of threatened or potential harm." *Murray v. Bath Iron Works Corp.,* 867 F.Supp. 33, 41 (D.Me.1994). The Court is satisfied that summary judgment in favor of either Plaintiff or Defendant on this issue is inappropriate.

■ Viewing the facts in the light most favorable to Plaintiff, the Court finds that a material issue of fact exists as to whether the Site poses an imminent and substantial endangerment. Plaintiff calls to the Court's attention a recent field data summary on the Waterville Gas Works Site from the Maine Department of Environmental Protection ("DEP") indicating the existence of potential

---

1. The Court recognizes that a section 6972(a)(1)(B) action may remain subject to the equitable defense of laches. Since the parties have not presented this issue, however, the Court will not address it.

human and environmental hazards at the Site which warrant additional investigation. Plaintiff also emphasizes that no remediation has been done at the Site which would mitigate its potential risk. The Court finds this evidence sufficient to preclude summary judgment in favor of Defendant.

Likewise, viewing the record in the light most favorable to Defendant, the Court is unable to conclude as a matter of law that the Site currently presents an imminent and substantial endangerment. Defendant focuses the Court's attention on older DEP findings which, while acknowledging that continued investigation of the Site is necessary, note that the Site does not pose an imminent threat to the public health or safety. The Court is persuaded that there exist material issues of fact on the potential threat posed by this Site which should be determined at trial. The Court, therefore, denies both Plaintiff's and Defendant's Motion for Summary Judgment on Count I.

### B. Count II and Defendant's Counterclaim—CERCLA

In Count II, Plaintiff alleges that Defendant is liable for past and future response costs incurred in connection with the hazardous substances at the Site, pursuant to CERCLA § 107(a). Defendant responds that Plaintiff is himself liable for response costs under CERCLA § 107(a). The Court is satisfied that summary judgment on Count II or Defendant's Counterclaim in favor of either party is inappropriate.

The Court first addresses the issue of whether Plaintiff and Defendant are entitled to bring cost recovery claims under CERCLA. CERCLA presents private parties with two distinct types of legal options:

(1) a response cost recovery action under CERCLA § 107(a), 42 U.S.C. § 9607; and (2) a contribution action under CERCLA § 113(f), 42 U.S.C. § 9613. *United Technologies Corp. v. Browning–Ferris Indus.*, 33 F.3d 96, 98 (1st Cir.1994). "A response cost recovery action under § 107(a) is available only to an 'innocent party,' or a plaintiff who does not bear CERCLA liability, for recovery from liable or potentially liable parties of all of the cleanup costs the plaintiff has incurred." *Saco Steel Co. v. Saco Defense, Inc.*, 910 F.Supp. 803, 809 (D.Me.1995) (citing *United Technologies*, 33 F.3d at 100). In contrast, "a contribution action under § 113(f) is available only to a 'non-innocent party,' or a plaintiff who already bears CERCLA liability." *Id.* While liability under section 107 is joint and several unless a defendant can demonstrate that the harm is divisible, liability under section 113 is several only, not joint. *Id.* (citations omitted).

Section 107(a) sets forth various categories of persons that may be held liable under CERCLA if there is a release or threatened release of a hazardous substance from a facility which causes the incurrence of response costs.[2] These "covered persons" include current owners, former owners, generators, and transporters. *See Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 889 F.2d 1146, 1150–51 (1st Cir.1989). Liability under CERCLA is "strict," subject only to several defenses set forth in section 107(b). *See id.* at 1150; *In re Hemingway Transport, Inc.*, 993 F.2d 915, 931 (1st Cir.1993).

Plaintiff argues that Defendant is limited to bringing a section 113 contribution action rather than a section 107 cost recovery action because Defendant is a "non-innocent party" under CERCLA. Defendant makes the

---

**2.** 42 U.S.C. § 9607 states in relevant part:

(a) Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of … a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, … of hazardous substances owned or possessed by such person, by any other party or entity, at any facility … owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, … from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

. . . .

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan.

same argument against Plaintiff. The Court is persuaded that while it is appropriate for Plaintiff to proceed with his cost recovery claim at this stage of the proceedings, Defendant's Counterclaim is more properly treated as a claim for contribution pursuant to section 113.

Plaintiff acknowledges that, as the current owner and operator of the Site, he is a covered party under 42 U.S.C. § 9607(a)(1), which extends CERCLA liability to "the owner and operator of a vessel or a facility." Neither party disputes that there was a "release or threatened release" of hazardous substances at the Site.

Plaintiff, however, contends that he is not liable under CERCLA because he is entitled to the affirmative defense set forth in section 107(b)(3). Pursuant to section 107(b)(3), there is no liability under section 107 for a party otherwise liable who can establish that the release or threat of release and the resulting damages were caused solely by:

> an act or omission of a third party other than . . . one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant . . . if the defendant establishes . . . that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions.

42 U.S.C. § 9607(b)(3).

Because a property chain of title can be considered a contractual relationship, Congress clarified the applicability of this defense by adding a definition of "contractual relationship" in the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), creating what has become known as the "innocent purchaser" defense. Pursuant to 42 U.S.C. § 9601(35), a "contractual relationship" includes transfers of ownership of land, unless the party asserting the defense can establish that he or she acquired the property "after the disposal or placement of the hazardous substance on, in, or at the facility,"

and the landowner can establish that "[a]t the time the [landowner] acquired the facility the [landowner] did not know and had no reason to know that any hazardous substance which is the subject of the release or threatened release was disposed of on, in, or at the facility." 42 U.S.C. § 9601(35)(A). A landowner may establish that it "did not know and had no reason to know" of the disposal if it undertook "at the time of acquisition, all appropriate inquiry into the previous ownership and uses of the property consistent with good commercial or customary practice in an effort to minimize liability." 42 U.S.C. § 9601(35)(B). *See In re Hemingway Transport, Inc.*, 993 F.2d at 932; *M & M Realty Co. v. Eberton Terminal Corp.*, 977 F.Supp. 683, 686–87 (M.D.Pa.1997).

■ The Court is satisfied that disputed issues of material fact prevent it from deciding as a matter of law whether Plaintiff is entitled to the "innocent purchaser" defense. For example, viewing the evidence in the light most favorable to Defendant, the Court finds that there is a genuine issue of fact as to whether Plaintiff himself added to the contamination at the Site. Defendant draws the Court's attention to Plaintiff's use of solvents and other hazardous substances at the Site, and the fact that Plaintiff has never had a contractual arrangement to dispose of any potential hazardous substances generated by his activities.

■ Likewise, viewing the record in the light most favorable to Plaintiff, the Court is unable to determine as a matter of law that Plaintiff is not entitled to the "innocent purchaser" defense. Plaintiff alleges that he never contaminated the Site, and that he did not know it was contaminated when he purchased it. In addition, Plaintiff has put forth evidence that he exercised "due care" in relation to the contaminated Site, by undertaking several environmental and engineering studies to analyze the extent of the contamination and remedial options. While Plaintiff has not presented any evidence that he investigated the Site for possible contamination prior to purchasing it, the Court is persuaded that Plaintiff's failure to investigate does not preclude him from asserting an "innocent

purchaser" defense as a matter of law. The "appropriate inquiry" determination, set forth in section 101(35), measures a potential "innocent purchaser's" actions based on their "consistency with good commercial or customary practice," taking into account "any specialized knowledge or experience on the part of the [landowner], the relationship of the purchase price to the value of the property if uncontaminated, commonly known or reasonably ascertainable information about the property, the obviousness of the presence or likely presence of contamination at the property, and the ability to detect such contamination by appropriate inspection." 42 U.S.C. § 9601(35)(B). The determination of whether, under the particular circumstances of this case, Plaintiff was truly an "innocent purchaser," is a factual dispute the Court cannot resolve on the current state of the record.[3] As a result, Plaintiff is entitled to proceed with his cost recovery action.

■ As the prior owner and operator of the Site at a time when hazardous substances were disposed of there, Defendant also falls within one of the four categories of potentially responsible parties. *See* 42 U.S.C. § 9607(a). In contrast to Plaintiff, however, Defendant does not assert any affirmative defense to this liability. As a result, Defendant is a "non-innocent party" under CERCLA, and is limited to bringing a contribution action pursuant to section 113.

■ The Court next addresses the argument made by both Plaintiff and Defendant that the response costs incurred by the opposing party are not necessary costs of response consistent with the national contingency plan ("NCP"). In order to prevail in a cost recovery action under section 107(a) of CERCLA, a party must establish that: (1) the defendant falls within a category or cate-gories of potentially responsible parties; (2) there has been a release or threatened release of a hazardous substance from a facility; (3) the release or threatened release has caused the claimant to incur response costs; and (4) the claimant's response costs were necessary and consistent with the national contingency plan. 42 U.S.C. §§ 9601(14), (22)–(25); *Saco Steel Co.*, 910 F.Supp. at 810 (citing *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 889 F.2d 1146, 1150 (1st Cir.1989)). A "non-innocent party" who wishes to bring a contribution action pursuant to section 113 must first demonstrate that the defendant is liable under section 107. After such a showing is made, the party may recover from those found liable "that portion of his expenditures which exceeds his pro rata share of the overall liability." *See United Technologies, Corp.*, 33 F.3d at 100.

■ Plaintiff argues that any response costs Defendant may have incurred as the result of the release of hazardous substances at the Site are litigation-related expenses, which are generally not recoverable as response costs. *See Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 972 F.2d 453, 461 (1st Cir.1992). Defendant responds by providing examples of what it alleges are recoverable response costs, including a Database Search Report and a Location Map. While the Court finds only minimal evidence in the record of Defendant's response costs, the Court is satisfied that summary judgment in favor of either party on this issue is inappropriate. Whether Defendant's proffered response costs are response costs consistent with the NCP, investigatory costs which may be recoverable regardless of their consistency with the NCP, or unrecoverable litigation-related expenses involves factual questions more appropriately resolved at tri-

---

**3.** Plaintiff argues that he is entitled to assert the third party defense in section 107(b)(3) without resorting to the "innocent purchaser" exception set forth in section 101(35) because his ownership of the Site did not occur "in connection with" the acts of Defendant in releasing the hazardous substance. *See New York v. Lashins Arcade Co.*, 91 F.3d 353, 360 (2d Cir.1996) (holding that a landowner is only precluded from raising the third party defense set forth in section 107(b) if contract between landowner and the third party is connected to the handling of haz-ardous substances). Defendant responds that a landowner whose ownership is not connected with the acts of the third party must satisfy both the requirements of section 101(35) and section 107(b)(3). The Court finds Defendant's interpretation persuasive. *See In re Hemingway Transport, Inc.*, 993 F.2d at 932 (purchaser of contaminated land who wishes to assert section 107(b)(3) defense must establish, among other things, that it did not know and "had no reason to know" that any hazardous substance was deposited at the facility).

al. *See Saco Steel Co.*, 910 F.Supp. at 811 (investigatory costs may be recoverable regardless of consistency with the NCP).

Similarly, Plaintiff alleges response costs associated with identifying other potentially responsible parties, assessing the extent of the contamination, and identifying remedial options. While Defendant contends that these costs are not consistent with the NCP and/or unrecoverable litigation-related expenses, the Court is satisfied that a genuine issue of material fact exists on this issue. The Court, accordingly, denies both parties' motions for summary judgment on Count II of Plaintiff's Complaint and Defendant's Counterclaim.[4]

## C. Count III—Ultrahazardous Activity

In Count III, Plaintiff alleges that the manufacturing of gas and the disposal of the associated wastes is an ultrahazardous activity giving rise to strict liability under Maine law. This Court has held that Maine "would likely recognize a cause of action for strict liability for the disposal and storage of hazardous waste." *Murray*, 867 F.Supp. at 48; *see also Hanlin Group, Inc. v. Int'l Minerals & Chemical Corp.*, 759 F.Supp. 925, 933 & n. 13 (D.Me.1990) (Maine Law Court would likely recognize a claim for strict liability for the disposal of hazardous waste). Defendant contends that it is entitled to summary judgment on this Count because Plaintiff's claim is barred by the six-year statute of limitations applicable to all civil actions in Maine.[5] 14 M.R.S.A. § 752. Plaintiff responds that he is entitled to summary judgment because the six-year limitations period is inapplicable to this claim, and the facts establish that

Defendant disposed of hazardous waste at the Site.

The Court finds that neither Plaintiff nor Defendant are entitled to summary judgment on this claim. With respect to Defendant's summary judgment motion, the Court is persuaded that Plaintiff's claim is not barred by the statute of limitations. Generally under Maine law, "[f]or any civil action, including a claim for strict liability, the statute of limitations is six years." *Cyr v. Michaud*, 454 A.2d 1376, 1384 n. 4 (Me. 1983). In the context of common law trespass and nuisance claims arising out of the disposal of hazardous waste, however, both this Court and the Maine Law Court have held that so long as a plaintiff can demonstrate that the hazardous waste remains present on the land and can be abated, a plaintiff may assert an action for continuing nuisance or trespass regardless of when the hazardous substance entered the land. *See Murray*, 867 F.Supp. at 46; *Jacques v. Pioneer Plastics, Inc.*, 676 A.2d 504, 506–07 (Me. 1996). When a trespass or nuisance continues, a new cause of action accrues each day, and the statute of limitations provides no bar so long as the tort is ongoing. *Jacques*, 676 A.2d at 508; *Murray*, 867 F.Supp. at 48. Because Plaintiff alleges continuing harm caused by Defendant's disposal, the Court finds the Maine Law Court's analysis in *Jacques* persuasive in the context of Plaintiff's strict liability claim. Accordingly, the Court denies Defendant's Motion for Summary Judgment on this claim.

The Court, however, is satisfied that disputed issues of material fact preclude summary judgment in favor of Plaintiff on

4. Although it may appear facially inconsistent for the Court to deny summary judgment on Plaintiff's cost recovery action against Defendant, while simultaneously finding that Defendant is a "non-innocent party," this result is compatible with the existing statutory framework. Defendant is a "non-innocent party" because it falls within one of the four categories of "liable" parties set forth in section 107(a), and does not assert any defense to this liability. Under section 107(a)(4)(B), a PRP is "liable" for all response costs which are consistent with the national contingency plan. In this case, there exists a genu-

ine issue of material fact as to what, if any, response costs incurred by Plaintiff fall within this category.

5. Defendant also argues that a strict liability claim for the disposal of hazardous waste is unavailable to the subsequent owner of contaminated property for alleged harm relating to that same property. The *Hanlin* court, however, expressly rejected this argument. *See Hanlin*, 759 F.Supp. at 934.

this Count. Such issues, including what, if any, injury Plaintiff has suffered as a result of Defendant's activities, need to be resolved at trial.[6]

## D. Count IV—Contribution

In Count IV, Plaintiff asserts a claim against Defendant for common law contribution. At a hearing on the parties' cross-motions for summary judgment and in Plaintiff's memoranda, however, Plaintiff requested that the Court consider this Count as a claim for contribution under CERCLA. If Plaintiff is found to be a "non-innocent party" at trial, therefore, the Court will treat this claim as one brought pursuant to CERCLA § 113. 42 U.S.C. § 9613(f) ("In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate."). The Court denies Defendant's Motion for Summary Judgment on Count IV.

## CONCLUSION

Plaintiff's Motion for Partial Summary Judgment on Counts I, II, III, and Defendant's Counterclaim is DENIED. Defendant's Motion for Summary Judgment on all Counts of Plaintiff's Complaint and its Counterclaim is also DENIED.

*SO ORDERED.*

---

[6]. By denying summary judgment in favor of Plaintiff on Count III, the Court is not suggesting that additional proof is necessary on the issue of Defendant's liability. Rather, the Court finds that an issue of material fact exists with respect to the damages, if any, Plaintiff has incurred as a result of Defendant's activities.