**CARRIER CORPORATION, Plaintiff,**

v.

**Paul P. PIPER, Jr., et al., Defendants.**

**No. 05–2307 Ml/V.**

United States District Court,
W.D. Tennessee,
Western Division.

Oct. 24, 2006.

Joey Miranda, Robinson & Cole LLP, Hartford, CT, John A. Poakeart, Pamela Elkow, Robinson & Cole, LLP, Stamford, CT, Michael E. Keeney, Cheryl R. Estes, Thomason Hendrix Harvey Johnson & Mitchell, Memphis, TN, for Plaintiff.

David C. Wade, Adam Calhoun Simpson, Martin Tate Morrow & Marston, Allen T. Malone, Burch Porter & Johnson, Charles C. Harrell, Charles F. Morrow, Michael D. Fitzgerald, Butler Snow O'Mara Stevens & Canada, PLLC, Memphis, TN, for Defendants.

## ORDER SETTING ASIDE MAGISTRATE JUDGE'S JANUARY 13, 2006 REPORT AND RECOMMENDATION AND ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE A DEFERRED AMENDED COMPLAINT

McCALLA, District Judge.

Before the Court is Plaintiff's Renewed Motion for Leave to File a Deferred Amended Complaint, filed December 1, 2005. Plaintiff seeks to amend its Complaint to add a new cause of action arising under the "citizen suit" provision contained in Section 7002(a)(1)(B) of the federal Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B). Defendant Quanex Corporation ("Quanex"), Defendant Lund Coating Technologies, Inc. ("Lund"), and the Piper Defendants [1] oppose the motion. Each filed a response in opposition to the motion on December 12, 2005, after which Plaintiff filed a reply brief on January 6, 2006. On December 16, 2005, this Court referred the matter to Magistrate Judge Vescovo for report and recommendation. On January 13, 2006, Magistrate Judge Vescovo entered a Report and Recommendation on Plaintiff's Renewed Motion for Leave to File a Deferred Amended Complaint recommending that Plaintiff's renewed motion be granted. Defendants filed objections to the Magistrate Judge's Report and Recommendation on January 30, 2006, and Plaintiff filed a memorandum in support on February 9, 2006. In response to Plaintiff's memorandum in support, Defendant Quanex filed a reply memorandum on February 21, 2006. On March 8, 2006, Plaintiff filed a surreply in support of the Report and Recommendation and in response to Quanex's reply.

Pursuant to Local Rule 72.1(g)(2), the Court has reviewed *de novo* the parties' original briefs, the Magistrate Judge's Report and Recommendation, Defendants' objections and reply, and Plaintiff's memorandum in support and surreply. Based on this *de novo* review, the Court finds it appropriate to set aside the magistrate judge's January 30, 2006 Report and Recommendation. For the following reasons, the Court SETS ASIDE the magistrate judge's January 13, 2006 Report and Recommendation, and DENIES Plaintiff's Renewed Motion for Leave to File a Deferred Amended Complaint.

## I. BACKGROUND

The instant lawsuit arises out of Plaintiff's asserted need to remediate chromium discovered at the Town of Collierville's ("Town's") municipal water wells, Water Plant 2 ("Water Plant 2"), that Carrier alleges has impacted its own trichloroethylene ("TCE") remediation operations.[2] Plaintiff seeks to recover past and future response costs, damages, and other relief "relating to the deposition, release and disposal of chemical liquids or solid, semi-solid or liquid wastes or hazardous wastes or 'hazardous substances' ... at, on or under certain property located at or near 719 Piper Street, Collierville, Tennessee

---

1. The Piper Defendants include the following parties: Paul P. Piper, Jr., Individually and as Executor of the Estate of Paul P. Piper, Sr.; Piper Industrial Coatings, Inc.; Piper Mini–Storage, Inc.; Piper Industries, Inc., a Texas Corporation; Claudia B. Piper, Individually and as Trustee for Annette Allison Piper, Paul Gordon Piper, and Ronald K. Piper, Jr.; Annette Piper Sandstorm; Paul Gordon Piper; and Ronald K. Piper, Jr. The Court will refer to these defendants collectively as "the Piper Defendants."

2. According to Carrier, "the presence of chromium at Water Plant 2 jeopardizes Carrier's ability to meet its obligation to treat TCE.... As a result, it has become necessary for Carrier to treat the chromium along with the TCE." (Mem. Law Supp. Pl.'s Obj. to Piper Defs.' Mot. Dismiss Carrier's First Am. Compl., Dec. 23, 2005, Doc. 86, at 2.)

(the 'Smalley–Piper Site')." (First Am. Compl. ¶ 1.) According to Carrier, each of the Defendants is a current or past owner and/or operator of industrial manufacturing or other business operations at the Smalley–Piper Site. (*Id.* ¶ 37.)

Carrier has been manufacturing heating and air conditioning equipment at its property located at 97 Byhalia Road, Collierville, Tennessee ("Carrier Property") since the late 1960s. (*Id.* ¶ 34–35.) In July 1986, TCE was discovered in Water Plant 2. Water Plant 2 is located adjacent to Carrier Property. (*Id.* ¶ 41.) In response to the discovery of the TCE release, the United States Environmental Protection Agency ("USEPA") issued a Record of Decision ("ROD") on September 2, 1992 (First Am. Compl. ¶ 43) and on February 11, 1993, the USEPA issued a Unilateral Administrative Order for Remedial Design and Remedial Action ("1993 UAO") to Carrier. (*Id.* ¶ 42).[3] Pursuant to the 1993 UAO, Carrier has implemented investigative and remedial steps in order to address the TCE contamination in the soil and groundwater at Water Plant 2 and Carrier Property, and, according to Carrier, it will have to complete additional work related to TCE contamination in the future. (*Id.* ¶ 43.) In particular, under the ROD, Carrier must maintain control over the TCE contamination in the groundwater by pumping and treating the groundwater through Water Plant 2. (*Id.* ¶ 44.) Under an agreement entered in April 1996 between Carrier and the Town of Collierville ("Town"), once Carrier treats the TCE, the treated water would be introduced into the Town's potable water supply. (*Id.* ¶ 45.)

In April 2003, the Town informed Carrier that it had found chromium in Water Plant 2. (*Id.* ¶ 46.) As a result of the presence of unacceptable levels of chromium, the Town shut down Water Plant 2 in December 2003. (First Am. Compl. ¶ 47.) Since then, the Town and Carrier have entered into an Interim Agreement whereby Carrier would discharge treated groundwater from Water Plant 2 into the Town's publicly owned treatment works ("POTW"). (*Id.* ¶ 48.) Carrier claims that it is required to treat the groundwater for chromium in order to discharge it to the POTW (*Id.* ¶ 48) and that it has incurred substantial costs in the discharging of treated water from Water Plant 2 to the POTW, and in researching and implementing options for treating the chromium in the water at Water Plant 2. (*Id.* ¶ 50–51).

In October 2004, the USEPA issued an Administrative Order on Consent for Remedial Investigation/Feasibility Study ("2004 AOC"), in which some of the Piper Defendants agreed to conduct and implement a Remedial Investigation and Feasibility Study ("RIFS") concerning the Smalley–Piper Site.[4] (Quanex Corp.'s Obj. to Mag.'s Rep. and Rec. Dec. on Pl.'s Renewed Mot. for Leave to File Deferred

---

**3.** According to the 1993 UAO, the USEPA determined that "two discrete releases" of TCE had occurred at the Carrier Property. Also, "a wastewater lagoon, operated from about 1972 to 1979, apparently contained waste contaminated with TCE and zinc." Furthermore, the Remedial Investigation/Feasibility Study ("RIFS") conducted by Carrier "confirmed the presence of hazardous substances in the soil at the Site and in the groundwater beneath and beyond such disposal areas." (Quanex Corp.'s Obj. to Mag.'s Rep. and Rec. Dec. on Pl.'s Renewed Mot. for

Leave to File Deferred Am. Compl. ("Quanex's Obj."), Jan. 30, 2006, Doc. 99, Ex. A, at 8–9.)

**4.** The Respondents to the 2004 AOC include the following: (1) Claudia B. Piper, Trustee of three trusts established by agreement dated April 11, 1979, and of three trusts established under the will of Ronald K. Piper Sr. for the benefit of Annette A. Piper, Paul G. Piper, and Ronald K. Piper, Jr.; and (2) the Estate of Paul Piper, Sr. (Quanex's Obj., Doc. 99, Ex. B, at 4.)

Am. Compl. ("Quanex's Obj."), Jan. 30, 2006, Doc. 99, at 3, Ex. B at 1–2.) On September 23, 2005, the USEPA proposed listing the Smalley–Piper Site on the National Priorities List ("NPL") for chromium contamination. The Smalley–Piper Site was listed on the NPL on April 27, 2005. (First Am. Compl. ¶ 52.) Also, chromium has been identified as a substance historically used by Defendants and/or third parties in the course of business operations at the Smalley–Piper Site. (*Id.* ¶ 53.)

According to Carrier, it is the chromium originating at the Smalley–Piper Site which has migrated to Water Plant 2 and surrounding properties. (*Id.* ¶ 55.) Further, according to Carrier, neither chromium nor any similar substance was ever disposed, discharged, spilled, or released at the Carrier Property. (*Id.* ¶ 56.) Finally, Carrier believes that it is or may be required by the USEPA and/or the Tennessee Department of Environmental Conservation to investigate and remediate the chromium. (*Id.* ¶ 57.)

Carrier filed its original motion for leave to file a deferred amended complaint on October 20, 2005. As in its renewed motion presently before the Court, Carrier sought to amend its complaint to add a new cause of action arising under the "citizen suit" provision of the federal Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B). The Magistrate Judge denied Carrier's original motion without prejudice on November 8, 2005, because it appeared that the 2004 AOC and the 1993 UAO rendered Carrier's proposed amendment futile. The Magistrate Judge, however, left open to Carrier the opportunity to renew its motion if Carrier claimed that such orders did not bar the citizen suit. Carrier filed its renewed motion on December 1, 2005, and it is this motion that is presently before the Court.

## II. STANDARD OF REVIEW

 Under the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires." Fed. R.Civ.P. 15(a). Leave to amend should be granted "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief" in order to give the plaintiff "an opportunity to test his claim on the merits." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Under Rule 15(a), the court has some discretion in allowing amendments. Factors to consider include prejudice to the opposing party, delay, and futility of amendments:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Id.* Also, "[a]mendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun County,* 408 F.3d 803, 817 (6th Cir.2005)(citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.,* 632 F.2d 21, 23 (6th Cir.1980)).

## III. ANALYSIS

 To ensure that citizen suits do not duplicate or interfere with remediation efforts already underway, RCRA prohibits citizen suits if certain actions have been initiated by the USEPA or the state in which a site is located. *See McGregor v. Indus. Excess Landfill, Inc.,* 709 F.Supp. 1401, 1408 (N.D.Ohio 1987). In particular, under RCRA § 7002(b)(2)(B), a plaintiff is precluded from filing a citizen suit if "in order to restrain or abate acts or conditions which may have contributed or are

contributing to the activities which may present the alleged endangerment," the USEPA

(i) has commenced and is diligently prosecuting an action under [RCRA § 7003] or under [CERCLA § 104];

(ii) is actually engaging in a removal action under [ CERCLA § 104];

(iii) has incurred costs to initiate a Remedial Investigation and Feasibility Study under [CERCLA § 104] and is diligently proceeding with a remedial action under [CERCLA]; or

(iv) has obtained a court order (including a consent decree) or issued an administrative order under [CERCLA § 106] or [RCRA § 7003] pursuant to which a responsible party is diligently conducting a removal action, Remedial Investigation and Feasibility Study (RIFS), or proceeding with a remedial action.

42 U.S.C. § 6972(b)(2)(B)(i)-(iv). "In the case of an administrative order referred to in subsection (iv), [citizen suits] are prohibited only as to the scope and duration of the" order. *Id.* This Court finds that the

1993 UAO issued by the USEPA concerning the Carrier Property fulfills § 42 U.S.C. 6972(b)(2)(B)(iv), thus barring Carrier's proposed citizen suit.[5]

According to Carrier, however, the 1993 UAO does not serve to bar its proposed citizen suit under subsection (iv) because the proposed suit is outside the scope of the 1993 UAO: "the Carrier UAO does not address the 'acts or conditions which may have contributed or are contributing to the activities which may present the alleged endangerment' to which the proposed RCRA citizen suit is directed." (Mem. of Law in Supp. of Renewed Mot. of Carrier Corp. for Leave to File Deferred Am. Compl. ("Carrier Mem."), Dec. 1, 2005, Doc. 75, at 5)(quoting RCRA § 7002(b)(2)(B))(emphasis omitted).[6] However, this Court finds to the contrary—the proposed suit is within the scope of the 1993 UAO, and, thus, applying subsection (iv), Carrier may not bring its citizen suit. Because the proposed amendment would not survive a motion to dismiss, amending the complaint would be futile.[7]

---

**5.** Defendants advance a number of additional arguments for barring Carrier's proposed citizen suit: (1) Piper's 2004 AOC serves to bar the suit under RCRA § 7002(b)(2)(B)(iv); (2) the RIFS initiated at the Smalley–Piper Site serves to bar Carrier's suit pursuant to RCRA § 7002(b)(2)(B)(iii); (3) Carrier's motion should be denied because it is the result of undue delay, an amendment would prejudice Defendants, and Carrier has failed to assert good cause for the delay; (4) Lund asserts that it, in particular, does not fall within the scope of persons identified as liable for relief in 42 U.S.C. § 6972(a)(1)(B); (5) CERCLA § 133(h) requires the dismissal of Carrier's RCRA suit as that subsection withdraws federal court jurisdiction (except in limited circumstances not applicable to the instant case) "to review any challenges to removal or remedial action selected under [CERCLA § 104], or to review any order issued under [CERCLA § 106]."

Because the Court denies Carrier's motion to amend on the ground that pursuant to RCRA § 7002(b)(2)(B)(iv) the 1993 UAO bars the citizen suit, it finds an analysis of the other grounds advanced by Defendants to be unnecessary.

**6.** Carrier never claims that as required by subsection (iv) the 1993 is not an administrative order under CERCLA § 106 nor that Carrier is not a responsible party diligently conducting a removal or remedial action. Thus, the sole issue to analyze is whether the proposed citizen suit falls within the scope of the 1993 UAO.

**7.** Even if Carrier successfully establishes, in its suit for cost recovery under CERCLA, that it is an "innocent party" under CERCLA § 107(b)(3), the Court's finding that it may not bring a RCRA action would not be affected—Carrier would still be considered a "responsible party," with respect to the 1993 UAO, diligently conducting a removal or re-

As Carrier acknowledges in its memorandum in support of its renewed motion, the "scope and duration" clause of RCRA § 7002(b)(2)(B) " 'manifests Congress's desire to permit citizen suits to be brought to remedy imminent and substantial dangers which are not being addressed by existing section 106 orders. It is the scope of the abatement action that is relevant. . . .' " *A–C Reorganization Trust v. E.I. DuPont de Nemours & Co.*, 968 F.Supp. 423, 430 (E.D.Wis.1997)(quoting *Acme Printing Ink Co. v. Menard, Inc.*, 881 F.Supp. 1237, 1245 (E.D.Wis.1995)); *see also McGregor*, 709 F.Supp. at 1408("Congress intended to provide the private right of action under RCRA *only* when the EPA or the state fail[s] to act to remedy the hazardous situation.")(emphasis added).

Carrier asserts that because it is the Smalley–Piper Site, not the Carrier Property, that is allegedly the cause of the chromium contamination at Water Plant 2, and because the Carrier UAO does not address the Smalley–Piper Site, Carrier's RCRA suit is outside the scope of the 1993 UAO. (Carrier Mem., Doc. 75, at 5–6.) Also, according to Carrier, the ROD, issued on September 3, 1992,

> requires that Carrier maintain control over [TCE], not chromium contamination, in groundwater. . . . In addition pursuant to the Statement of Work ("SOW") issued by EPA in connection with Carrier's UAO, Carrier was required to implement investigative and remedial actions to address TCE contamination, not chromium contamination. . . . Because the presence of chromium at Water Plant 2 has jeopardized Carrier's ability to meet its obligation to treat TCE, it has become necessary for Carrier to treat the chromium along with the TCE.

(Reply Mem. in Supp. Renewed Mot. of Carrier Corp. for Leave to File Deferred

Am. Compl. ("Carrier Reply"), Jan. 6, 2006, Doc. 91, at 7–8.) Carrier further asserts that "[t]he Carrier UAO is limited to TCE contamination and does not address chromium contamination." (*Id.* at 8.)

However, this Court finds that in order to satisfy the requirements of the 1993 UAO, an order under CERCLA § 106, Carrier has become legally obligated to treat the groundwater at Water Plant 2 for chromium, as well as for TCE. Quanex's interpretation of the 1993 UAO is persuasive: "the UAO restrains Carrier's present 'handling' of chromium so as to prevent the very endangerment that Carrier now claims as a basis for its RCRA citizen suit." (Quanex Corp.'s Opp. to Pl.'s Renewed Mot. for Leave to File Deferred Am. Compl. ("Quanex's Opp."), Dec. 12, 2006, Doc. 82, at 4.) Moreover, Carrier's own pleadings are consistent with such an interpretation: according to Carrier, it "is or may be required by USEPA and/or the Tennessee Department of Environmental Conservation ('TDEC') to investigate, monitor, and/or remediate such substances, *including chromium*." (First.Am.Compl.¶ 57.)(emphasis added). Finally, Carrier has brought a CERCLA suit in reliance on the contention that its cleanup of chromium at Water Plant 2 is involuntary and pursuant to an EPA order under CERCLA § 106. In its Objection to Quanex's Motion to Dismiss, Carrier admits that as a result of the 1993 UAO it has been issued under § 106, it "is acting under a legal obligation and is subject to penalties for noncompliance." It also cites to *Viacom, Inc. v. United States*, 404 F.Supp.2d 3, 8 (D.D.C.2005), for the proposition that as a party acting " 'involuntarily . . . pursuant to an EPA order under § 106 . . . [it] is assured the opportunity to seek contribution via § 113.' " (Obj. Carri-

medial action pursuant to an administrative

order as required by subsection (iv).

er Corp. to Def. Quanex Corp.'s Mot. Dismiss, Aug. 26, 2005, Doc. 35, incorporated by reference into Doc. 51, at 13.)

And although the UAO focuses on the cleanup of TCE, its reach is not limited to TCE. In particular, Section XII.A. of the UAO explicitly requires Carrier to address other hazardous substances at Water Plant 2:

> In the event of any action or occurrence after the effective date of this Order which causes or threatens a release of a hazardous substance or which may present an immediate threat to public health or welfare or the environment, Respondent shall immediately take all appropriate action to prevent, abate, or minimize such release or endangerment. . . .

(Quanex's Obj., Doc. 99, Ex. A at 21–22.) Thus, the fact that chromium may not have been discovered until after the 1993 UAO does not mean that the UAO does not cover chromium contamination. Moreover, TCE is not the only hazardous substance addressed by name in the 1993 UAO: "The following hazardous substances found in the soil and in the groundwater beneath the Site were selected as contaminants of concern for purposes of conducting the risk assessment: TCE, dichloroethylene (DCE), tetrachloroethylene (PCE), 1,2–dichloroethane (DCA), vinyl chloride, lead and zinc." (*Id.*, Ex. A at 9.) Also, according to the UAO, "[t]he RI/FS was completed by Carrier in April 1992, and confirmed the presence of *hazardous substances* in the soil at the Site and in the groundwater beneath and beyond such disposal areas." (*Id.*)(emphasis added). Furthermore, TCE is itself only specifically mentioned in one section of the UAO. (*Id.*, Ex. A at 9) ("IV. Find-

ings of Fact.") Also, the Statement of Work ("SOW"), which "sets forth the major tasks that must be completed by Respondent" and was "incorporated into" the UAO (*Id.*, Ex. A at 12) does not focus the selected remedy on TCE *or any other particular hazardous substance:* "The selected remedy shall include the following: (1) the North Remediation System (NRS) and plant area soil vapor extraction (SVE); (2) groundwater containment/treatment at Water Plant 2, and supplemental extraction well(s)/treatment via air stripping; and (3) institutional controls placed on well construction and water use in the general area of the Site." (*Id.*, Ex. A at 48–49.)

Carrier asserts in its surreply that the Court should nevertheless find the proposed citizen suit to be outside the scope of the 1993 UAO. According to Carrier, Section XII.A. of the UAO is a "broad reservation of rights clause" and that "[s]everal courts have held that interpreting broad reservation of rights clauses to enlarge the scope of an order would render the 'scope and duration' clause of RCRA § 7002(b)(2)(B)(iv) meaningless." (Surreply of Carrier Corp., March 8, 2006, Doc. 112, at 2–3.) Therefore, according to Carrier, Section XII.A. should not be used to expand the reach of the 1993 UAO.[8]

Carrier cites to two unpublished district court cases for support. *Hoosier Envtl. Council, Inc. v. N. Ind. Pub. Serv. Co.,* 2004 WL 2011470, *6, 2004 U.S. Dist. LEXIS 10805, at * 18–19 (N.D.Ind. May 21, 2004); *Goe Eng'g Co. v. Physicians Formula Cosmetics,* 1997 WL 889278, ***6–7, 1997 U.S. Dist. LEXIS 23627, at *20–23 (C.D. Cal. June 5, 1997). In *Hoosier Environmental Council, Inc.,* the

---

**8.** Carrier alleges also that to the extent that Carrier is only required to "take all *appropriate* action to prevent, abate, or minimize such release or endangerment" that because it did not cause the chromium contamination,

"remediation by Carrier of that contamination does not constitute 'appropriate' action under CERCLA." (Surreply of Carrier Corp., Mar. 8, 2006, Doc. 112, at 3.) The Court finds this argument unpersuasive.

court, acknowledging that *Goe Engineering Co.* was the "only other reported case to decide whether a reservation clause expands the scope of a § 106 order for purposes of subsection (iv)," found that interpreting a broad reservation of rights clause to expand the scope of a § 106 order would render the "scope and duration clause ... useless." *Hoosier Envtl. Council, Inc.*, 2004 WL 2011470, **6–7, 2004 U.S. Dist. LEXIS 10805 at *19–20. The court was concerned that "[i]mminent and substantial dangers left unaddressed by the EPA would be deprived of the medicine of citizen suits." *Id.*, 2004 WL 2011470, *6, 2004 U.S. Dist. LEXIS 10805, at *19. The court in *Goe Engineering Co.* held that "the broad reservation language" contained in a CERCLA § 106 order "*alone* cannot justify barring [a] citizen suit; for all the Court knows, the EPA may use such broad language in every 106 Order, in which case reading the language to exclude citizen suits would eviscerate section 6982(b)(2)(B)(iv)." *Id.*, 2004 WL 2011470, *7, 2004 U.S. Dist. LEXIS 10805, at *23 (emphasis added).[9]

The Court finds that the cases cited by Carrier are distinguishable from the instant case. First, the Court's holding here is not solely dependent on the language contained in Section XII.A. of the 1993 UAO: section XII.A. is not working "*alone* [to] justify barring [a] citizen suit." As discussed previously, the 1993 UAO, examined as a whole, requires Carrier to address other hazardous substances present in Water Plant 2, and is not limited to the remediation of any single substance such as TCE. Rather, it is focused on cleaning up the contamination at Water Plant 2. Contrary to what Carrier implies, to support its finding the Court is not required to interpret Section XII.A. to expand the scope of the 1993 UAO. Also, Carrier's own pleadings affirm the Court's interpretation of the 1993 UAO. Furthermore, the district court's concern in *Hoosier Environmental Council, Inc.* is inapplicable here because "[i]mminent and substantial dangers [have not been] left unaddressed." Carrier, by its own admission, is addressing the chromium contamination at Water Plant 2. This Court concludes, therefore, that although the UAO does not specifically reference chromium, the UAO is not limited in scope to TCE and requires Carrier to remediate the presence of other hazardous substances, such as chromium, found at Water Plant 2. Allowing Carrier to proceed with a citizen suit under RCRA would duplicate remediation efforts already underway.

Thus, because the proposed citizen suit is within the scope of Carrier's 1993 UAO, pursuant to RCRA § 7002(b)(2)(B)(iv), the UAO serves to bar Carrier's proposed citizen suit.

## IV. CONCLUSION

As set forth above, Carrier may not bring its citizen suit against Defendants, and thus because the proposed amendment would not survive a motion to dismiss, amending the complaint would be futile. Accordingly, the Court SETS ASIDE the magistrate judge's January 13, 2006 Report and Recommendation, and DENIES Plaintiff's motion to amend the complaint.

So ORDERED this 23rd day of October, 2006.

---

9. Carrier offers the Court reason to believe that Section XII.A of the 1993 UAO includes language typically included in the USEPA's unilateral administrative orders. (Surreply of Carrier Corp., Doc. 112, at 4, Ex. B)(citing Model Unilateral Administrative Order for Remedial Design and Remedial Action under Section 106 of CERCLA, Section XIII).